Hillsborough-northern judicial district
No. 95-761

ERNEST S. SIMONDS

v.

CITY OF MANCHESTER

April 16, 1997

*Wiggin & Nourie, P.A.*, of Manchester (*Dort S. Bigg* and *Michael S. Owen* on the brief, and *Michael A. Delaney* orally), for the plaintiff.

*Thomas I. Arnold, III*, assistant city solicitor, of Manchester, by brief and orally, for the defendant.

BRODERICK, J. The defendant, the City of Manchester (city), appeals a jury verdict for the plaintiff, Ernest S. Simonds, in a

contract action against the city. The city contends that the Superior Court (*Conboy*, J.) erred in denying its motion for directed verdict, in failing to give certain jury instructions, and in denying its motions for judgment notwithstanding the verdict and to set aside the verdict. We reverse.

The following facts were developed at trial. In 1984, the city offered to hire the plaintiff as fleet manager. After the city offered him the position, but before he accepted, the plaintiff discussed the terms of employment with Leo Pepino, a member of the Manchester Board of Aldermen, and Wilbur Jenkins, city personnel director. The plaintiff asked how he could obtain "permanent" employment, and Pepino explained that if the plaintiff could show cost savings to the city, he could apply for a six-year appointment, which, if he received it, would be "as permanent as six years can be." The plaintiff subsequently accepted the position.

After two years as fleet manager, the plaintiff reported that he had saved the city in excess of a quarter of a million dollars and asked for a six-year commitment. According to the minutes of the December 16, 1986, meeting of the Manchester Board of Mayor and Aldermen (board), Alderman Henry Thibault moved "that the term of Office for the position of Fleet Manager be established at six years" and nominated the plaintiff to the position "for [a] term expiring February, 1993." Without discussion, the board voted to confirm the plaintiff's appointment as fleet manager for a term of six years.

Five months later, the board passed an ordinance creating the fleet management department. The ordinance provided in pertinent part that "[t]he head of the fleet management department shall be the fleet manager who shall be elected for an indefinite term by, and hold office at the pleasure of, the Board of Mayor and Aldermen." The board, however, did not elect anyone "for an indefinite term" as fleet manager, and the plaintiff continued in the position as before.

In December 1990, the board declined to fund the fleet management department for the fiscal year 1991, and the city formally terminated the plaintiff's employment effective December 31, 1990. In December 1993, the plaintiff initiated this action against the city, alleging that he had a contract of employment from February 6, 1987, to February 6, 1993, as fleet manager for the city and that the city wrongfully terminated his employment in December 1990. Following trial, the jury returned a verdict for the plaintiff.

■ On appeal, the city maintains that the plaintiff's employment as fleet manager was not contractually based but simply an appointment for a term of years, which the city could in good faith modify

or abolish. With a municipal corporation's power to create an office comes the power to change or abolish it, *see* 3 E. MCQUILLIN, MUNICIPAL CORPORATIONS § 12.118, at 552 (3d ed. rev. 1990), even if the term of office has not yet expired, *see Williams v. City of New Bedford*, 21 N.E.2d 265, 265 (Mass. 1939). This power may be circumscribed by law, however, "as when the creation is contractual in nature." 3 MCQUILLIN, *supra* § 12.118, at 552; *see Corn v. City of Oakland City*, 415 N.E.2d 129, 133 (Ind. Ct. App. 1981). For purposes of this case, we assume, without deciding, that the position of fleet manager is one for which persons may contract. *See* 10A MCQUILLIN, *supra* § 29.101, at 44 (discussing power of municipal boards to bind successors to employment contracts).

■ Whether the evidence in this case demonstrated that the plaintiff's employment as fleet manager was appointive or contractual in nature is an issue of fact, provided there was evidence from which the trier of fact could conclude a contract existed between the parties. *See Harrison v. Watson*, 116 N.H. 510, 511, 363 A.2d 204, 205 (1976). In denying the city's motions for directed verdict and judgment notwithstanding the verdict, the trial court necessarily determined there was evidence from which the jury could find a contract existed. "We will uphold a denial of these motions where sufficient evidence in the record supports the trial court's ruling." *Weldy v. Town of Kingston*, 128 N.H. 325, 330, 514 A.2d 1257, 1260 (1986). "Such motions should be granted only when the sole reasonable inference that may be drawn from the evidence, which must be viewed in the light most favorable to the nonmoving party, is so overwhelmingly in favor of the moving party that no contrary verdict could stand." *Bronson v. The Hitchcock Clinic*, 140 N.H. 798, 800, 677 A.2d 665, 667-68 (1996) (quotation omitted).

■ Though "[a] contract may be established by spoken or written words or by acts or conduct," *Harrison*, 116 N.H. at 511, 363 A.2d at 205, the fact of an appointment to a public office for a fixed term and salary is not itself a contract, *see Lamborn v. Jessop*, 631 P.2d 917, 919 (Utah 1981); *Bowman v. Maine State Emp. Appeals Bd.*, 408 A.2d 688, 690 (Me. 1979). Among the requirements for contract formation is a meeting of the minds about terms — "each party must have the same understanding as to the terms of the agreement." *Appeal of Sanborn Regional School Bd.*, 133 N.H. 513, 518, 579 A.2d 282, 284 (1990). When a court determines whether such a mutual understanding exists, the evidence is viewed objectively; undisclosed meanings and intentions are "immaterial in arriving at the existence of a contract between the parties." *Seal*

*Tanning Co. v. City of Manchester*, 118 N.H. 693, 698, 393 A.2d 1382, 1385 (1978) (quotation and ellipses omitted).

These general principles must be considered in light of Manchester's City Charter, which prohibits departments, agencies, and officers of the city from

> contract[ing] to expend any money or incur any liability or enter[ing] into any contract which by its terms involves expenditures of money during the fiscal year in excess of the amounts set forth in, or in a manner inconsistent with, the budget and appropriation resolutions, . . . provided, however, that this limitation shall not apply . . . to the making of contracts and leases approved by the board of mayor and aldermen.

MANCHESTER, N.H., CODE OF ORDINANCES, CHARTER § 6.07. In other words, to survive the city's motions for directed verdict and judgment notwithstanding the verdict, the plaintiff had to proffer some evidence that in confirming the plaintiff's employment as fleet manager, the board did not simply appoint him to the position, but rather shared his understanding that the city would be contractually bound to employ him for six years.

At trial, the plaintiff testified that before the fleet management department existed, he had discussed his desire to obtain "permanent" employment as fleet manager with the city's personnel director and one alderman. The plaintiff recounted Alderman Pepino's statement that an appointment by the board would be "as permanent as six years can be." When the board confirmed his appointment, the plaintiff believed he "had a contract and job with the city for six years" and could be dismissed only for "just cause." On cross-examination, however, the plaintiff admitted that he did not recall the board discussing his employment in terms of a "contract," and that all he had been given at the December 16, 1986, board meeting was a six-year appointment as fleet manager.

The plaintiff also offered testimony from Glen Gervais and, by deposition, Henry Thibault, both of whom were members of the board at the time it confirmed the plaintiff's appointment. Gervais testified that he thought the board's appointment would be "binding on the city," but acknowledged that the plaintiff could be terminated for a number of reasons, including a failure to fund the position. Thibault testified that he thought the plaintiff had received a six-year commitment from the city. Nonetheless, he also stated that the plaintiff would serve only at the board's pleasure, and that the position could be eliminated by a failure to fund it.

■ This evidence is insufficient to support a finding by the jury that the board understood the plaintiff's employment as fleet manager to be anything other than what it appeared: an appointment for a term of years. The minutes of the December 16, 1986, board meeting reveal only that the board confirmed the plaintiff's appointment as fleet manager for a designated term; as the plaintiff conceded, no mention was made of a binding contractual commitment. Though Alderman Pepino had suggested to the plaintiff that his employment would be "permanent" for six years, these statements, as reported by the plaintiff, indicated no mutual assent as to the meaning of "permanent." Even if the statement evidenced assent, Pepino, by himself, on this record, did not have authority to bind the board. Both of the former board members who testified at trial acknowledged that the board retained the power to dismiss the plaintiff for a variety of reasons, including failure to fund the position of fleet manager — a view directly contrary to the plaintiff's understanding of his employment as based upon a contractual commitment that he could be dismissed only for "just cause."

When the evidence presented is considered in the light most favorable to the plaintiff, the sole reasonable inference to be drawn from the evidence is that there was no meeting of the minds on the essential terms of any agreement and, therefore, no employment contract between the plaintiff and the city. Absent such a contract, the city could lawfully discontinue funding the position of fleet manager. See *Williams*, 21 N.E.2d at 266. Because the evidence in the record supports no other conclusion, the trial court erred in denying the city's motions for directed verdict and judgment notwithstanding the verdict.

*Reversed.*

All concurred.