Strafford
No. 96-329

WILLIAM F. HOPKINS JR. & a.

v.

FLEET BANK - NH

March 2, 1999

*James H. Schulte*, of Dover, by brief and orally, for the plaintiffs.

*Pierce Atwood*, of Portland, Maine (*Byrne J. Decker* on the brief and orally), for the defendant.

THAYER, J. The plaintiffs, William F. Hopkins, Jr., Frances G. Hopkins, and Hopkins Enterprises, Inc., appeal a decision of the Superior Court (*Mohl*, J.) granting summary judgment to the defendant, Fleet Bank-NH. We reverse and remand.

On August 13, 1992, the defendant and the plaintiffs entered into two agreements, a "Forbearance, Deceleration and Workout Agreement" (forbearance agreement) and an "Escrow and Discount Agreement" (discount agreement). The forbearance agreement consolidated multiple loans owed by the plaintiffs to the defendant into a single promissory note in the amount of $2,891,250 at an interest rate of 7.5% and payable in full on August 13, 1995.

At the time the parties entered into the forbearance agreement, the plaintiffs were in arrears in payment of real estate taxes on land upon which the defendant held first mortgages as security for the loans. The plaintiffs' failure to pay 1989 real estate taxes of $38,941.47 by August 28, 1992, would have resulted in the lapse of the two-year redemption period, allowing the city of Dover to execute a tax deed on the property. The plaintiffs also owed outstanding real estate taxes for 1990 and 1991.

This litigation centers around section 4.05 of the forbearance agreement, which set forth various payment schedules for the plaintiffs to pay past due real estate taxes. Section 4.05, entitled "Tax Payments and Escrow," obligated the plaintiffs to establish a deposit account with the defendant and make twelve monthly payments of $10,000 into that account for payment of real estate taxes for the tax years 1990 and 1991. Section 4.05 also provided that "[t]he funds in said deposit account shall be released to [William F. Hopkins, Jr.] solely for the purpose of the payment of said real estate taxes when due." Moreover, section 4.05 granted the defendant the right to set off all deposited funds held by the defendant against the loan balance. An additional right to setoff was contained in a separate section of the forbearance agreement, which established the defendant's rights and remedies upon the plaintiffs' default.

The second agreement, the discount agreement, gave the plaintiffs the option to pay 1990 and 1991 real estate taxes, plus a discounted fee of $70,000 for back interest, legal fees, and expenses. Payment of this sum would have eliminated the plaintiffs' obligations to make monthly deposits under section 4.05 of the forbearance agreement. This option expired on November 13, 1992. Until that date, payments made were to be held in escrow. If the plaintiffs did not pay the full discount fee by the deadline, then any payments actually made were to be governed by section 4.05, and the defendant was entitled to record a mortgage on real estate owned by the plaintiffs as additional security.

In approximately December 1992, the defendant sold the plaintiffs' note and mortgages to a third party. At the time of the sale, the plaintiffs deposited four tax payments of $10,000 into the account for the months of September through December 1992. The plaintiffs did not, however, pay all of the taxes and the entire discount fee by the option deadline.

The plaintiffs were notified of the sale of their note and were directed to make all future payments under the loan to the third party's agent. Also in December 1992, current real estate taxes became due on the properties encumbered by the mortgage. The plaintiffs maintain that they asked the defendant to release the deposited funds to pay the real estate taxes in December 1992. The defendant disputes whether the plaintiffs requested release of the funds, and maintains that even if such a request had been received, it would have been denied. Ultimately, the plaintiffs' loans were sold again, and the plaintiffs are reportedly current in their loan obligations.

After December 1992, the plaintiffs failed to make further payments into the account and failed to pay principal and interest due on the loan. Finding the plaintiffs in default, the third party's agent set off the funds in the account against the loan balance in March 1994.

The plaintiffs filed suit against the defendant, seeking recovery of the monies deposited in the account pursuant to section 4.05, plus interest, costs, and penalties. The plaintiffs claimed that they planned to use the deposited funds to pay their real estate taxes and because the defendant failed to release the account funds, the plaintiffs were unable to pay the taxes on time. Due to the plaintiffs' inability to pay their real estate taxes, the plaintiffs incurred 18% interest fees and costs, and their credit was damaged. Both parties moved for summary judgment. The trial court granted the defendant's motion.

The trial court found that the parties disputed whether the plaintiffs requested disbursement of the tax payment account in December 1992. The court, however, ruled that this dispute was immaterial. The court reasoned that because the plaintiffs failed to make the required tax payments after December 1992, the plaintiffs were in default under the separate default provision of the forbearance agreement, and, therefore, the defendant was entitled to exercise its right of setoff. The plaintiffs appeal, arguing, *inter alia,* that the contract was ambiguous and in order to grant summary judgment, the superior court improperly made findings of fact. *See Baker v. Wilmot,* 128 N.H. 121, 121, 509 A.2d 1252, 1252-53 (1986) (in ruling on summary judgment motions, trial court exceeds its authority by making factual findings).

We review the trial court's application of the law to the facts *de novo. Del Norte, Inc. v. Provencher,* 142 N.H. 535, 537, 703 A.2d 890, 892 (1997). In reviewing the superior court's summary judgment rulings, we consider the evidence in the light most favorable to the non-moving plaintiffs, and, if no genuine issue of material fact exists, we determine whether the defendant, as movant, is entitled to judgment as a matter of law. *Gaucher v. Cold Springs RV Corp.,* 142 N.H. 299, 301, 700 A.2d 299, 301 (1997).

■  The interpretation of a contract, including whether a contract term is ambiguous, is ultimately a matter of law for this court to decide. *Holden Eng'g and Surveying v. Pembroke Rd. Realty Trust,* 137 N.H. 393, 395, 628 A.2d 260, 262 (1993). "A clause is ambiguous when the contracting parties reasonably differ as to its meaning." *Merrimack School Dist. v. Nat'l School Bus Serv.,* 140 N.H. 9, 11, 661 A.2d 1197, 1198 (1995) (quotation omitted).

Section 4.05 of the forbearance agreement provides in pertinent part:

> The funds in said deposit account shall be released to [the plaintiffs] solely for the purpose of the payment of . . . real estate taxes *when due.* . . . Each Borrower hereby grants to the [defendant] a continuing security interest in, and the right to setoff against, all deposits . . . held by . . . the [defendant] . . . . The [defendant] may apply or setoff such deposits or other sums against the Consolidated Loan
> . . . .

(Emphasis added.) According to the plaintiffs, section 4.05 created an escrow account, and the defendant was required to release the funds for payment of real estate taxes when due. The plaintiffs

contend that the term "when due" mandated that the defendant release the funds for payment of taxes due in December 1992 because at the time of the request, the taxes were due and the plaintiffs were not in default. The plaintiffs argue that had the defendant released the funds when the real estate taxes became due, as required by the contract and prior to any alleged default, the funds would not have been available for the defendant to set off in March 1994. The plaintiffs contend that their interpretation of the term "when due" is reasonable because the greatest risk that the defendant faced regarding the nonpayment of real estate taxes on property it held as collateral was the town's imposition of a superior lien due to nonpayment of taxes. The plaintiffs maintain that the defendant would obtain greater security by the actual payment of taxes than it would obtain by the accumulation of the funds in the deposit account until the day prior to the town issuing a tax deed.

The defendant argues that the lack of contract language specifically requiring release of funds according to the timing espoused by the plaintiffs, coupled with an integration clause in the forbearance agreement, necessarily leads to the conclusion that the contract is unambiguous. We disagree. As previously stated, the test for ambiguity in a contract is whether the parties reasonably differ as to its meaning. See Merrimack School Dist., 140 N.H. at 11, 661 A.2d at 1198.

According to the defendant, the parties intended that the plaintiffs make all twelve payments under section 4.05(a) prior to the release of the funds. The defendant also maintains that the parties intended that the term "when due" refers to the day prior to a town tax deeding. Furthermore, the defendant maintains its interpretation of the contract is reasonable because section 4.05 clearly grants the defendant a security interest in the deposit account funds, as well as a right to set off the funds against the loan balance. According to the defendant, its right to setoff and its security interest in the deposit account funds trump its duty to release the funds.

Although the contract does not clearly state the position asserted by the plaintiffs, it does not clearly state the defendant's position either. Because we conclude that both parties' interpretations are reasonable, we find section 4.05 ambiguous. See Merrimack School Dist., 140 N.H. at 11, 661 A.2d at 1198.

We next consider whether the ambiguous contract gave rise to a genuine issue of material fact, as the plaintiffs contend. An argument between the parties about the meaning of an ambiguous

contractual term "is typically an argument about a material fact," and summary judgment will generally have been improperly granted, "unless the extrinsic evidence presented about the parties' intended meaning is so one-sided that no reasonable person could decide to the contrary." *Den Norske Bank AS v. First Nat. Bank of Boston*, 75 F.3d 49, 53 (1st Cir. 1996) (quotations and brackets omitted); *cf. Erin Foods Servs., Inc. v. 688 Props.*, 119 N.H. 232, 235, 401 A.2d 201, 203 (1979).

Based upon our review of the record, we conclude that summary judgment was improperly granted because neither party presented extrinsic evidence about the parties' intended meaning that is so one-sided that no reasonable person could decide to the contrary. *Den Norske Bank AS*, 75 F.3d at 53; *cf. Erin Foods Servs., Inc.*, 119 N.H. at 235, 401 A.2d at 203 (we will not set aside trier of fact's interpretation of meaning of extrinsic evidence unless the meaning is so clear that reasonable persons could reach only one conclusion).

█ The defendant maintains that the plaintiffs' affidavit fails to comport with RSA 491:8-a, IV (1983) because, according to the defendant, the plaintiffs' affidavit fails to set forth specific facts showing that there is a genuine issue for trial. We disagree because the defendant failed to show that there was no genuine issue of material fact, and, therefore, the plaintiffs were not required to rebut the showing. *Blue Cross/Blue Shield v. St. Cyr*, 123 N.H. 137, 144, 459 A.2d 226, 230 (1983).

*Reversed and remanded.*

HORTON and BRODERICK, JJ., did not sit; the others concurred.