Strafford
No. 2004-634

MICHAEL S. SHERMAN, M.D.

v.

JOSEPH M. GRACIANO, M.D. & a.

Argued: March 23, 2005
Opinion Issued: April 11, 2005

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Scott H. Harris* and *Cathryn E. Vaughn* on the brief, and *Mr. Harris* orally), for the plaintiff.

*James H. Schulte*, of Dover, on the brief and orally, for the defendants.

GALWAY, J. The plaintiff, Michael S. Sherman, M.D., appeals an order of the Superior Court (*Mohl*, J.) upholding an arbitrator's decision that the language of the contract between the parties was ambiguous. We reverse and remand.

The record supports the following facts. In December 1995, defendant Dover Internal Medicine, P.A. (Corporation) entered into an employment agreement with the plaintiff. The employment agreement provided that the plaintiff would be an employee for eighteen months and would thereafter join defendants Joseph M. Graciano, M.D., and Paul T. Berry, M.D., as a shareholder in the Corporation, according to a buy-in formula. After the plaintiff completed his installment payments, he acquired a one-third interest in the assets of the Corporation.

In April 1999, the Corporation's shareholders executed a stock redemption agreement (Agreement). It included a formula for establishing the value of a departing shareholder's stock which the Corporation would purchase upon the termination of employment. Graciano and Berry signed the Agreement; the plaintiff did not.

In October 2002, the plaintiff notified the defendants that he was withdrawing as a partner from their medical practice. Because the parties

could not agree on the amount the plaintiff was to be paid upon his departure, he filed suit. At the parties' request, the superior court sent the case to binding arbitration pursuant to RSA 542:3-a (1997). In a February 2004 decision, the arbitrator determined that: (1) the plaintiff "is a party to the [Agreement] in accordance with RSA 293-A:7.32" and, therefore, that it governed the buy-out of his interest from the practice upon his departure; (2) the Agreement provision describing the amount owed to a departing shareholder was "ambiguous"; (3) there was not "any factual or legal basis to various offsets urged by [the Corporation]"; and (4) the plaintiff was entitled to $99,652, plus interest.

All parties moved for the superior court to modify the arbitrator's decision. *See* RSA 542:8 (1997). The plaintiff argued that the arbitrator committed plain mistake in determining that the Agreement's buy-out clause was ambiguous. The trial court disagreed, and the plaintiff appealed. *See* RSA 542:10 (1997).

An arbitration decision may be corrected or modified upon a showing that the arbitrator committed "plain mistake." RSA 542:8; *John A. Cookson Co. v. N.H. Ball Bearings*, 147 N.H. 352, 356 (2001). An award may be vacated for plain mistake when it is determined that an arbitrator misapplied the law to the facts. *See Turcotte v. Griffin*, 120 N.H. 292, 293 (1980).

At issue here is article II, section c in the Agreement, which describes the amount owed to a departing shareholder. Specifically, it provides that the departing shareholder will be paid:

> [a]n amount equal to twenty-five percent (25%) of the actual collections received by the Corporation for medical services provided to patients of the Corporation for the twelve (12) month period ending at the end of the fiscal quarter which next preceded the date of the event that caused the termination of the ownership interest in the Corporation.

In addressing the plaintiff's claims regarding article II, section c, the arbitrator stated:

> [T]he calculation of the buy-out is ambiguous, and based upon all of the surrounding circumstances, is properly interpreted as applying to the collections of the departing physician during the prior year, rather than the practice as a whole. A contrary interpretation would lead to an unreasonable and unfair result.

Upon review, the superior court stated that since the parties disagreed as to the interpretation of the pertinent clause, and both interpretations were "reasonable," the arbitrator correctly considered parol evidence regarding the Corporation's finances and the parties' intentions. *See MacLeod v. Chalet Susse Int'l, Inc.*, 119 N.H. 238, 243 (1979) (stating that where parties draft an agreement that leaves uncertain their mutual intent, relevant extrinsic evidence should not be excluded). Because the court determined that the arbitrator could have found the defendants' interpretation to be correct, it found no plain mistake in the arbitrator's interpretation of the Agreement.

The plaintiff argues that the superior court erred in finding that the arbitrator did not commit plain mistake when it ruled that the buy-out provision clause in the Agreement was ambiguous. Specifically, the plaintiff submits that, "where the terms 'Corporation' and 'Stockholder' were defined by contract, and where the parties distinguished throughout their contract between 'Stockholder' and 'Corporation,' the arbitrator and the trial court erred when they found that reasonable minds could differ on the meaning of the questioned clause."

The defendants argue that the arbitrator did not commit plain mistake. They contend that article II, section c is ambiguous because it does not specify whether the "medical services" are those provided by the departing shareholder or those provided by all of the employees of the Corporation. The defendants would read the disputed provision to say, "twenty-five percent (25%) of the actual collections received by the Corporation for medical services *provided by the shareholder*." In support of their argument, the defendants rely upon Dr. Graciano's testimony that the provision of the agreement "could be interpreted either way," and that the interpretation urged by the plaintiff's counsel was not what he and Dr. Berry intended.

■ Because the Agreement is a contract, we apply the general rules of contract interpretation in our review. *See Robbins v. Salem Radiology*, 145 N.H. 415, 417 (2000) (applying general rules of contract interpretation to a partnership agreement). The interpretation of a contract, including whether a contract term is ambiguous, is ultimately a question of law for this court to decide. *Duke/Fluor Daniel v. Hawkeye Funding*, 150 N.H. 581, 582 (2004). Accordingly, we review the trial court's interpretation of the contract *de novo. Id.* A clause is ambiguous when the contracting parties reasonably differ as to its meaning. *Appeal of Town of Durham*, 149 N.H. 486, 487 (2003). Absent fraud, duress, mutual mistake, or

ambiguity, we must restrict our search for the parties' intent to the words of the contract. *Id.* Accordingly, we will reverse the determination of the fact finder where, although the terms of the agreement are unambiguous, the fact finder has improperly relied upon extrinsic evidence in reaching a determination contrary to the unambiguous language of the agreement. *Id.*

 We conclude that article II, section c is not ambiguous, and that it clearly provides that a departing physician is entitled to receive twenty-five percent of the collections received by the entire Corporation. Language exists in the Agreement to support this conclusion. "Corporation" is specified as Dover Internal Medicine, P.A., and "Stockholders" are listed as Drs. Graciano and Berry. Accordingly, it is clear that collections received by the "Corporation" refers to the collections received by the medical practice as a whole, and that medical services provided by the "Corporation" means services provided to patients of the medical practice as a whole. Further, the accountant for the Corporation testified as to the amount of actual collections received by the Corporation—an amount which reflected collections of the entire medical practice.

Moreover, Graciano's testimony supports the lack of ambiguity in section c. When asked about his understanding of the section, he testified as follows:

Q: And you understand actual collections received by the corporation as . . . referring to what?

A: Well, I don't know. It sounds like it could be interpreted either way. It could be actual collections by the whole corporation or I'd like to think it referred to actual collections by . . . the person who generated the collections.

Q: Of course, that's not what it says though?

A: Correct. Correct.

. . . .

Q: But when you entered into the shareholder agreement, that's not the way you were going to have somebody bought out, correct, based strictly upon what patient belonged to which doctor?

A: No. No. No.

Q: And, in fact, you . . . can read this . . . language. You don't have any problems understanding that this says that "collections received by the corporation" and understanding that that means collections received by the corporation, right?

A: Correct.

Q: You just would have rather it say something different, correct?

A: Yes.

According to this testimony, Graciano did not say that the Agreement was ambiguous, only that he wished the words said something different. He also made it clear that, at the time he signed the Agreement, he did not understand that the parties would be bought out based strictly upon which patients belonged to which doctor.

We thus hold that a reasonable person, considering the plain language of the contract, would conclude that the language of article II, section c is not ambiguous. Therefore, any difference in the parties' interpretation of the agreement was not reasonable, *see Appeal of Town of Durham*, 149 N.H. at 487, and thus the arbitrator misapplied the law to the facts. *See Turcotte*, 120 N.H. at 295. Accordingly, the arbitrator should have restricted his search for the parties' intent to the words of the contract and should not have considered extrinsic evidence in interpreting the Agreement. *See Appeal of Town of Durham*, 149 N.H. at 487. Because the arbitrator calculated the plaintiff's share of the assets based upon an error of law, we conclude that the superior court erred by finding that the arbitrator did not commit plain mistake in interpreting the Agreement. Therefore, we remand to the superior court with instructions to remand to the arbitrator to determine what amount the plaintiff should be granted upon departing from the Corporation. *See Cookson*, 147 N.H. at 362 (remanding to superior court, after arbitrator denied plaintiff interest based upon an error of law, with instructions to remand to arbitrator to determine whether interest should be awarded).

*Reversed and remanded.*

BRODERICK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.