Merrimack
No. 2005-062

THOMAS BEHRENS & a.

v.

S.P. CONSTRUCTION COMPANY, INC.

Argued: January 11, 2006
Opinion Issued: May 17, 2006

*Gallagher, Callahan & Gartrell, P.A.*, of Concord (*Jeanne P. Herrick* on the brief and orally), for the petitioners.

*Danis Lewis Law Office*, of Natick, Massachusetts (*Robert M. Daniszewski* on the memorandum of law and orally), for the respondent.

DALIANIS, J. The petitioners, Thomas and Kerry Behrens, appeal an order of the Superior Court (*McGuire*, J.) denying their request for specific performance of a sales agreement they entered into with the respondent, S.P. Construction Company, Inc., as well as their request for contract damages. We affirm.

The record supports the following facts. In late 2002, the petitioners sought to purchase property in Newport from the respondent, a real estate brokerage and sales company. The petitioners and the respondent signed a sales agreement on January 31, 2003, and February 2, 2003, respectively. The selling price, as recorded in the signed sales agreement, was $315,000, and the petitioners paid a $5,000 deposit on February 7, 2003. The sales agreement contained a financing provision stating that the agreement was "contingent upon the [petitioners] obtaining financing" in the amount of $200,000 "or less." An addendum to this provision contains the following term: "Sellers to provide up to $200,000 in first mortgage financing at the rate of 7% interest for the first 7 years of the purchase . . . ."

Prior to closing, a dispute arose regarding the financing provisions in the agreement, delaying the culmination of the sale. In August 2003, the petitioners filed a petition seeking specific performance of the sales agreement and damages. They claimed that the financing terms obligated the respondent to provide as much financing as they required, up to $200,000. The respondent, however, argued that the agreement obligated the petitioners to accept as much financing as the respondent could provide, up to $200,000.

After a bench trial, the trial court found the sales agreement to be ambiguous, and, therefore, considered parol evidence. Noting that both parties' positions were reasonable, the trial court concluded that there was no meeting of the minds on an essential term of the sales agreement, and, as such, the contract was unenforceable. Accordingly, the trial court denied the petitioners' request for specific performance and damages.

On appeal, the petitioners argue: (1) that the trial court erred in its application of contract law to the sales agreement; (2) that the trial court improperly applied a subjective standard in evaluating contract formation; (3) that the trial court erred by finding the sales agreement to be ambiguous and admitting parol evidence; and (4) that the trial court erred when it declined to order specific performance of the sales agreement.

■ Because the sales agreement is a contract, we apply the general rules of contract interpretation in our review. *See Sherman v. Graciano*, 152 N.H. 119, 121 (2005). The interpretation of a contract, including whether a contract term is ambiguous, is ultimately a question of law for this court to decide. *Id.* Accordingly, we review a trial court's interpretation of a contract *de novo*. *Id.* Where, however, the terms of a contract are indeed ambiguous, and the fact finder has properly looked to extrinsic evidence to determine the intent of the parties, our standard of review is more deferential. *Galloway v. Chicago-Soft*, 142 N.H. 752, 756 (1998). We will sustain a trial court's findings and conclusions unless they

are lacking in evidential support or tainted by error of law. *Appeal of the State of N.H.*, 147 N.H. 426, 429 (2002).

*I. Application of Contract Law*

The petitioners first contend that the trial court improperly conflated contract formation principles with contract interpretation principles. Specifically, they argue that courts must first determine that a contract was formed between the parties before construing the contract's language, and that the trial court erred by interpreting the language of the contract to find that no contract was formed. The petitioners offer no authority supporting the position that principles of contract formation and interpretation must remain exclusive of each other in a court's analysis of a contract.

■ Offer, acceptance, and consideration are essential to contract formation. *Tsiatsios v. Tsiatsios*, 140 N.H. 173, 178 (1995). There must be a meeting of the minds on all essential terms in order to form a valid contract. *See Simonds v. City of Manchester*, 141 N.H. 742, 746 (1997); *see also* 17A AM. JUR. 2D *Contracts* § 30 (2004). A meeting of the minds is present when the parties assent to the same terms. *Chisholm v. Ultima Nashua Indus. Corp.*, 150 N.H. 141, 145 (2003). Moreover, the terms of a contract must be definite in order to be enforceable. *See id*; *see also* RESTATEMENT (SECOND) OF CONTRACTS § 33(1) comment *b* at 92 (1979) (contract not formed "unless the terms of the contract are reasonably certain").

■ The trial court found the disputed financing terms to be ambiguous. A trial court may use parol evidence to aid in interpreting an ambiguous term of a contract. *Richey v. Leighton*, 137 N.H. 661, 663 (1993); *see also Ouellette v. Butler*, 125 N.H. 184, 187-88 (1984) ("Extrinsic evidence is admissible when it serves to aid in interpretation, or to clarify an ambiguity rather than to contradict unambiguous terms of a written agreement."). After considering testimonial evidence from both parties, as well as documentary evidence from the respondent, the trial court concluded that the sales agreement was unenforceable because there was no "meeting of the minds" as to one of its essential terms.

Having reviewed the record before us, we conclude that the trial court properly inquired into the formation of the sales agreement prior to finding it unenforceable. As such, the trial court did not err in this respect.

## II. Application of Objective Standard

The petitioners next argue that the trial court erred by failing to apply an objective standard when assessing whether a meeting of the minds existed between the parties. We disagree.

■ It is true that existence of a meeting of the minds sufficient to form a valid contract is analyzed under an objective standard. *See Chisholm*, 150 N.H. at 145. When there is a dispute regarding the terms of a contract, it is to be determined by the trier of fact. *Id.* "In determining the actual understanding and intent of the parties, the trier of fact should consider the objective meaning of the expressed contract terms." *Tsiatsios*, 140 N.H. at 178.

■ An objective standard places a reasonable person in the position of the parties, and interprets a disputed term according to what a reasonable person would expect it to mean under the circumstances. *N.A.P.P. Realty Trust v. CC Enterprises*, 147 N.H. 137, 140 (2001). In determining the parties' intentions under an objective standard, a court "must determine what the parties, as reasonable people, mutually understood the ambiguous term to mean." *Id.* at 140-41. Having reviewed the record, we conclude that the trial court, in seeking to determine whether a meeting of the minds existed as to the disputed financing terms, first examined the language of the terms under an objective standard.

In its order of November 17, 2004, the trial court stated:

> The sales agreement, in regard to financing, notes that the amount will be "$200,000 or less" and that the seller is "to provide up to $200,000 in first mortgage financing." However, it does not state which party would decide the amount to be financed, or how the financed money would be used, i.e. as purchase mortgage money, for improvements, or for some other purpose that might affect the amount of the actual mortgage on the property.

Though the trial court did not explicitly announce that it was applying an objective standard, it plainly sought to understand, from an objective perspective, "what a reasonable person would expect [the terms] to mean under the circumstances." *N.A.P.P. Realty Trust*, 147 N.H. at 140. It was only after examining the disputed terms in this objective light that the trial court determined the language to be ambiguous.

## III. Ambiguity and the Admission of Parol Evidence

The petitioners contend that, "because reasonable persons could not disagree as to its meaning," the trial court further erred by finding the

sales agreement to be ambiguous. As we note above, the interpretation of a contract, including whether a contract term is ambiguous, is ultimately a question of law for this court to decide, and we review a trial court's interpretation of a contract *de novo. Sherman,* 152 N.H. at 121. Having reviewed the sales agreement, we agree with the trial court that the disputed financing terms are ambiguous.

■ When interpreting a written agreement, we give the language used by the parties its reasonable meaning, considering the circumstances and the context in which the agreement was negotiated, and reading the document as a whole. *Ryan James Realty v. Villages at Chester Condo. Assoc.,* 153 N.H. 194, 197 (2006). It is axiomatic that we give an agreement the meaning intended by the parties when they wrote it. *Gen. Linen Servs. v. Franconia Inv. Assocs.,* 150 N.H. 595, 597 (2004). Absent ambiguity, the parties' intent will be determined from the plain meaning of the language used in the agreement. *Ryan James Realty,* 153 N.H. at 197.

■ A clause of an agreement is ambiguous when the contracting parties reasonably differ as to its meaning. *Appeal of Town of Durham,* 149 N.H. 486, 487 (2003). If the agreement's language is ambiguous, it must be determined, under an objective standard, what the parties, as reasonable people, mutually understood the ambiguous language to mean. *See Gen. Linen Servs.,* 150 N.H. at 597; *see also N.A.P.P. Realty Trust,* 147 N.H. at 140-41.

The disputed language in the sales agreement stipulates that the agreement is "contingent upon the [petitioners] obtaining financing" in the amount of $200,000 "or less." An addendum to the sales agreement states, with regard to financing, that the respondent is to "provide up to $200,000 in first mortgage financing at the rate of 7% interest for the first 7 years of the purchase . . . ." The parties differ as to the meaning of these terms; the petitioners allege that they obligate the respondent to provide as much financing as they require up to $200,000, while the respondent contends that they obligate the petitioners to use as much financing as it elects to provide, up to $200,000.

■ We believe that the respective interpretations assigned to the financing terms by the parties, though irreconcilable, are reasonable. As the trial court correctly noted in its November 2004 order, the express language of the sales agreement fails to identify which party would decide the amount to be financed. From an objective perspective, a reasonable person in the position of either party could understand only what the maximum amount of financing was. The criteria for setting the actual amount to be financed—including the identity of the party controlling that

determination—is not objectively ascertainable from the plain language of the agreement. We conclude, therefore, that the trial court did not err by finding the disputed terms to be ambiguous. Accordingly, the trial court properly considered parol evidence in interpreting the ambiguous terms. *See Richey*, 137 N.H. at 663; *see also Ouellette v. Butler*, 125 N.H. at 187-88. When a trial court properly looks to extrinsic evidence to determine the intent of the parties, the question of a contract term's meaning should be left to the trier of fact unless the meaning of the extrinsic evidence is so clear that reasonable people could reach only one conclusion. *Galloway*, 142 N.H. at 756.

The first step in determining whether parol evidence is admissible is to consider whether the writing is a total integration and completely expresses the agreement of the parties. *Richey*, 137 N.H. at 664; *see* 11 S. WILLISTON & R. LORD, WILLISTON ON CONTRACTS § 33:14 (4th ed. 1999) (parol evidence rule applies only when parties integrate their agreement). We disagree with the trial court's finding that the sales agreement was "not a total integration that completely expresse[d] the agreement of the parties." The question of whether a contract is integrated is determined by the parties' intent. 11 WILLISTON & LORD, *supra* §§ 33:15, :16. Though not dispositive, an integration clause is evidence that parties intended a writing to be a total integration. *See Lapierre v. Cabral*, 122 N.H. 301, 306 (1982). The sales agreement signed by the parties contained an integration clause stating: "Any verbal representation, statements and agreements are not valid unless contained herein. This agreement completely expresses the obligations of the parties." Having reviewed the record before us, we believe that at the time the parties signed the sales agreement, they intended it to be an integration completely expressing their agreement. We note, however, that an integration clause does not necessarily render a contract unambiguous. *See Hopkins v. Fleet Bank—NH*, 143 N.H. 385, 389 (1999). As such, it was not error for the trial court to examine parol evidence in its effort to clarify and interpret the ambiguous financing terms.

The trial court heard evidence from the parties as to their respective interpretations of the financing terms, and "how they intended to benefit" from them. The trial court also considered documentary evidence submitted by the respondent that supported its argument. Based upon the evidence presented, the trial court determined that there had been no meeting of the minds between the parties as to an essential term, and that the sales agreement was, therefore, unenforceable.

We concur with the trial court's finding that the disputed financing terms were essential to the sales agreement. Though we have never

precisely defined what makes a term "essential," the word is commonly defined as "constituting an indispensable ... condition of a thing," "necessary," "important in the highest degree," and "unavoidably significant." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 777 (unabridged ed. 2002). This common definition accords with other jurisdictions' determinations as to what makes a contract term essential. *See Miller v. Tawil*, 165 F. Supp. 2d 487, 494 (S.D.N.Y. 2001) (a term is "essential" if "it seriously affects the rights and obligations of the parties"); *cf. Neeley v. Bankers Trust Co. of Texas*, 757 F.2d 621, 628 (5th Cir. 1985) ("[A]n 'essential' promise denotes one that the parties reasonably regarded, at the time of contracting, as a vitally important ingredient in their bargain."). Any term governing the right to determine the amount of financing, up to $200,000, would plainly be essential to the sales agreement, as evidenced by the dispute now before us.

We conclude that the trial court properly looked to extrinsic evidence to determine the intent of the parties. Our standard of review, therefore, becomes a deferential one. *Galloway*, 142 N.H. at 756. We do not find the trial court's conclusions to be lacking in evidential support or tainted by error of law, *see Appeal of State of N.H.*, 147 N.H. at 429, and we therefore sustain its finding that the sales agreement was unenforceable because there was no meeting of the minds on an essential term.

*IV. Specific Performance*

The petitioners finally claim that the trial court erred by failing to order specific performance of the contract. Because we affirm the trial court's finding that the sales agreement was unenforceable for lack of a meeting of the minds on an essential term, this issue is moot.

*V. Conclusion*

We conclude that the trial court did not err in its application of contract law and that it properly applied an objective standard in its analysis of the sales agreement. Further, we conclude that the disputed financing terms are indeed ambiguous, and that it was not error for the trial court to examine parol evidence in its efforts to clarify the ambiguity. As such, we concur with the trial court that the sales agreement was unenforceable because there was no meeting of the minds on an essential term, precluding an order of specific performance.

*Affirmed.*

BRODERICK, C.J., and GALWAY, J., concurred.