# THE STATE OF NEW HAMPSHIRE

## SUPREME COURT

**In Case No. 2017-0535, <u>MPG Bedford, LLC v. KDG Bedford, LLC & a.</u>, the court on August 13, 2018, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The plaintiff, MPG Bedford, LLC (MPG), appeals multiple orders from the Superior Court (<u>Abramson</u>, J., and <u>Messer</u>, J.) that denied its motion for partial summary judgment and granted summary judgment to the defendants, KDG Bedford, LLC (KDG), Enrohtwah, LLC (Enrohtwah), and nominal defendant Bentley Commons-Bedford, LLC (Company). The trial court ruled that the defendants did not breach a duty owed the Company when they did not seek to apply a discount provision in a previously negotiated forbearance agreement. The trial court also ruled that the defendants did not breach a duty owed the Company when it paid a fee that arose as a consequence of a loan modification. The court concluded that the decision to pay the fee was entitled to the protection of the business judgment rule. We affirm.

The following relevant facts are derived from the trial court's orders or are otherwise undisputed. The Company has three Class A members: MPG, KDG, and Enrohtwah. KDG and Enrohtwah have an eighty percent interest in the Company and are owned and controlled by Glenn Kaplan. Because the Company's operating agreement provides for management by any two Class A members, KDG and Enrohtwah control and manage the Company.

In 2006, the Company entered into a loan agreement with bondholders to finance the construction of a senior housing development. Manufacturers & Traders Trust Company (M&T) served as the Trustee for the bonds, and Hamlin Capital (Hamlin) served as the bondholder's representative. In 2010, the Company defaulted on the loan, which gave M&T the right to demand immediate payment, impose higher interest rates, and to foreclose on the development. As of January 2012, the unpaid principal balance on the loan was $16,000,000.

In July 2012, KDG and Enrohtwah, on the Company's behalf, negotiated a forbearance agreement with M&T to avoid foreclosure and favorably amend the loan repayment terms. The negotiated agreement included a mechanism by which, when the Company's monthly net cash flow was applied to amounts due on the loan, it would reduce the Company's indebtedness by $1.00 for every $0.75 paid, up to an aggregate pay-down of $3,000,000 (discount

provision). As a result of this discount provision, between the signing of the forbearance agreement in July 2012 and February 2014, the Company paid $397,500 from its net cash flow to M&T and received a $530,000 reduction in its indebtedness. In February 2014, the Company refinanced its debt with a loan servicer for the US Department of Housing and Urban Development (HUD) and paid off the balance of its loan to M&T. The Company did not exercise or attempt to exercise the discount provision at the time of refinancing.

At the time the Company refinanced and paid off the loan, the loan agreement with M&T had a five percent prepayment penalty totaling $800,000. The Company, represented by Kaplan, negotiated the prepayment penalty down to three percent, or $480,000, thereby saving the Company $320,000. During negotiations, Hamlin demanded a $220,000 fee for the loan modification. Kaplan negotiated that fee down to $160,000.

In 2015, MPG sued the defendants for allegedly violating their duty of care to the Company by failing to insist that the discount provision applied to the refinance payoff (Count 1), and by paying the $160,000 to Hamlin, a fee that MPG asserts the Company had no legal obligation to pay (Count 2).

The parties filed cross-motions for summary judgment on Count 1. The sole issue was whether, at the time that the Company refinanced and paid off its entire loan to M&T, the Company had a right to apply the discount provision. The discount provision reads:

> On a monthly basis by the 1st day of each month . . . , [M&T] shall withdraw from the Lockbox [a mechanism established in the original loan agreement] all income, rents and profits collected from the [senior housing development project], less actual expenses paid . . . (the "Net Cash Flow") and, together with any other amounts paid by the [Company] from other sources (including, without limitation, any bridge loan or other permitted debt subordinated to the Bonds), [M&T] shall apply said funds to the balance due under the Loan, reducing the Indebtedness by $1.00 for every $.75 remitted, up to an aggregate pay down of $3,000,000. Thereafter, the Net Cash Flow shall be applied to the Loan balance dollar for dollar.

(Emphasis added.) The defendants argued that the discount provision only applied to partial payments, not to a payment in full satisfaction of the loan. MPG argued that the discount provision applied regardless of whether the payment was a partial or full payment.

The trial court denied both summary judgment motions. Both parties moved for reconsideration. Upon reconsideration, the trial court concluded that it had not erred in using the canon of construction ejusdem generis to

2

interpret the phrase "including, without limitation, any bridge loan or other permitted debt subordinated to the Bonds" in the discount provision. Ejusdem generis means that, "where specific words in a statute follow general ones, the general words are construed to embrace only objects similar in nature to those enumerated by the specific words." Dolbeare v. City of Laconia, 168 N.H. 52, 55 (2015). Although MPG argued that the principle ejusdem generis is inapplicable to contract interpretation, the court concluded that "[i]t is well-settled that ejusdem generis applies when interpreting instruments other than statutes, including contracts." See 11 Williston on Contracts § 32:10, at 739-40 (4th ed. 2012). The court recognized that, "[i]n the context of contracts, . . . the 'specific clause cannot control the contract when that meaning defeats [the] agreement's overall scheme or purpose,'" but found that here, "applying ejusdem generis does not defeat the contract's overall scheme or purpose." (Quoting 11 Williston on Contracts, supra § 32:10, at 745.) Accordingly, the trial court concluded that it had not erred in its construction of the phrase "including, without limitation" and that the phrase "was intended to limit the discount's application to payments from sources in the same nature as a bridge loan or debt subordinated to the Bonds."

The trial court next addressed whether a refinance loan is of "the same nature" as a bridge loan or subordinate debt. (Quotation omitted.) See State v. Njogu, 156 N.H. 551, 552 (2007). Looking to the definitions of "bridge loan" and "subordinate debt" from Black's Law Dictionary, the court ruled that the definitions of both terms "presuppose the continued existence of the underlying debt, suggesting the parties did not intend to apply the discount provision to payments that entirely paid off the underlying debt." The court concluded that, as a matter of law, the refinance loan "was not in the same nature" as a bridge loan or subordinate debt. The court found that the defendants "had no duty to seek to apply the discount provision when they paid off the Company's debt with the refinance loan." Accordingly, the trial court granted the defendants' motion for reconsideration, and entered summary judgment for the defendants.

The defendants subsequently moved for summary judgment on Count 2. They argued that the decision to pay $160,000 to Hamlin was a decision entitled to the protection of the business judgment rule because it was a reasonable action that benefited the Company. MPG countered that the court should deny the motion because there were issues of material fact regarding "the so-called benefit that Defendants' [sic] secured for the Company, Hamlin's entitlement to any fee whatsoever, and the propriety of Defendants' unilateral decision to pay the fee." MPG also contended that, because the defendants worked with Hamlin on other projects, the defendants paid the fee merely to preserve their personal relationship, and did so at the Company's expense.

In ruling on the defendants' motion for summary judgment, the trial court correctly stated that the "general purpose of the [business judgment rule] 'is to afford directors broad discretion in making corporate decisions and to

3

allow these decisions to be made without judicial second-guessing in hindsight.'" (Quoting F.D.I.C. v. Castetter, 184 F.3d 1040, 1044 (9th Cir. 1999).) The court further noted that the legislature has codified the business judgment rule for LLC managers in RSA 304-C:109, which states:

> I. Unless the operating agreement provides otherwise, there shall be a rebuttable presumption that a manager has not breached the manager's duty of care if, in the matter in question, the manager has acted:
>
> (a) In accordance with contractual good faith;
>
> (b) In a manner the manager reasonably believed to be in the best interest of the limited liability company; and
>
> (c) On the basis of reasonably adequate information.

RSA 304-C:109, I (2015). The court observed that, although the business judgment rule involves issues of fact that generally should be left to a jury, the issue can be decided as a matter of law "where the evidence establishes there is no controverted material fact." (Quoting Palm Springs Villas II Homeowners Ass'n, Inc. v. Parth, 204 Cal. Rptr. 3d 507, 518 (Ct. App. 2016).) The court granted the defendants' motion, reasoning that MPG's assertion that the defendants had paid the fee to advance their own self-interest was, "at most, speculat[ive] . . . and fail[ed] to meet the standard necessary to defeat summary judgment or rebut the [business judgment rule] presumption." See RSA 491:8-a, IV (2010) (stating that the adverse party to a motion for summary judgment "may not rest upon mere allegations or denials of his pleadings, but his response, by affidavits or by reference to depositions, answers to interrogatories, or admissions, must set forth specific facts showing that there is a genuine issue for trial"). The court also found there was no genuine issue of material fact with regard to whether Kaplan acted with adequate information because Hamlin had provided "extensive services to the Company over the years" and Kaplan did not "blindly pay the fee" but rather "negotiated the fee from $220,000 down to $160,000." Finally, in response to MPG's allegations that the fee was improper because it was impermissible under HUD guidelines, the court observed that MPG had advanced "no specific facts, case law, or statute that such a payment is impermissible under HUD regulations." Accordingly, the court granted the defendants' motion for summary judgment, concluding that "agreeing to a fee of $160,000 to ensure a loan modification securing a benefit to the company of $320,000 is properly construed as an action KDG and Enrohtwah would reasonably believe to be in the best interest of the LLC." This appeal followed.

In reviewing a trial court's rulings on cross-motions for summary judgment, we consider the evidence in the light most favorable to each party in

its capacity as the non-moving party and, if no genuine issue of material fact exists, we determine whether the moving party is entitled to judgment as a matter of law. Langevin v. Travco Ins. Co., 170 N.H. ___, ___, 184 A.3d 80, 84 (2018). If our review of that evidence discloses no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law, then we will affirm the grant of summary judgment. Id. We review the trial court's application of the law to the facts de novo. Id.

On appeal, MPG argues that the trial court erred "when it applied ejusdem generis to interpret the discount provision" and that, "[e]ven assuming ejusdem generis was applicable, the court misapplied the rule" because "the plain and full abstract meaning of the words 'any other amounts' is irreconcilably inconsistent with the trial court's limitations it created with respect to the discount provision." MPG asserts that "[o]ne cannot have intended the phrase 'any amount paid' to mean partial payments only." In light of its interpretation of the discount provision, MPG contends we should reverse the trial court's denial of its motion for summary judgment or, alternatively, find the discount provision ambiguous and remand for trial. MPG also argues we should reverse the trial court's order granting the defendants summary judgment on Count 2 because, taking the facts in the light most favorable to MPG, genuine issues of material fact remain that require resolution by a fact finder.

As the appealing party, the plaintiff has the burden of demonstrating reversible error. Gallo v. Traina, 166 N.H. 737, 740 (2014). Based upon our review of the trial court's well-reasoned orders, the plaintiff's challenges to them, the relevant law, and the record submitted on appeal, we conclude that the plaintiff has not demonstrated reversible error. See id.

The trial court correctly ruled that the principle of interpretation known as ejusdem generis is applicable to contracts. See 11 Williston on Contracts, supra § 32:10, at 739-40 ("When general and specific clauses conflict, the specific clause governs the meaning of the contract."). Interpreting the contract using this principle, we agree with the trial court that the discount provision is unambiguous and did not apply to the refinance loan and prepayment. We also agree with the trial court that this interpretation does not defeat the agreement's overall scheme or purpose. The provision is unambiguous; accordingly we will not look to extrinsic evidence to determine the parties' intent. See Behrens v. S.P. Constr. Co., 153 N.H. 498, 503-04 (2006) (stating that extrinsic evidence may be used to interpret ambiguous contract terms but — absent ambiguity — the parties' intent will be determined from the plain meaning of the language used in the contract). However, we note that even if we were to consider extrinsic evidence, our conclusion finds support in the affidavit of Joseph J. Bridy, a partner at Hamlin who was involved in the drafting of the forbearance agreement. His affidavit states that the Company

5

requested that the discount provision be applicable in the context of a refinancing prepayment of the loan, but that request was specifically rejected.

We now turn to the trial court's ruling on the business judgment rule. We agree with the trial court that MPG's allegations do not give rise to genuine issues of material fact. Applying the business judgment rule, we conclude that Kaplan did not breach a duty of care to the Company when he paid the $160,000 fee to Hamlin. See RSA 304-C:109, I. Finally, we observe that Kaplan had a significant incentive to minimize the Company's expenses: as owner and manager of the two LLC members that comprise 80 percent of the Company, it was in his financial interest to minimize costs to the extent reasonably possible, as his companies would bear 80 percent of all costs incurred.

Affirmed.

LYNN, C.J., and HICKS, BASSETT, and DONOVAN, JJ., concurred.

**Eileen Fox,
Clerk**