# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2020-0336, <u>In the Matter of Jessica Buckley and Regan Buckley</u>, the court on April 5, 2021, issued the following order:**

Having considered the opening and reply briefs filed by the petitioner, Jessica Buckley (Wife), the brief filed by the respondent, Regan Buckley (Husband), and the record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). Wife appeals an order by the Circuit Court (<u>Alfano</u>, J.) denying her motions to bring forward and for contempt brought against Husband. We affirm.

The contempt power is discretionary, and the proper inquiry on appeal is not whether we would have found Husband in contempt, but rather whether the trial court unsustainably exercised its discretion when it declined to so find. <u>See</u> <u>In the Matter of Stall & Stall</u>, 153 N.H. 168 (2005). To establish an unsustainable exercise of discretion, Wife must demonstrate that the trial court's decision was clearly untenable or unreasonable to the prejudice of her case. <u>In the Matter of Peirano & Larsen</u>, 155 N.H. 738, 750 (2007). We "determine only whether there is an objective basis sufficient to sustain the discretionary judgment made." <u>In the Matter of Kempton & Kempton</u>, 167 N.H. 785, 803 (2015). "Our standard of review is not whether we would rule differently than the trial court, but whether a reasonable person could have reached the same decision as the trial court based upon the same evidence. <u>Id</u>. at 799.

We will not disturb the trial court's factual findings unless they are unsupported by the evidence or legally erroneous. <u>In the Matter of Nyhan and Nyhan</u>, 147 N.H. 768, 770 (2002). Moreover, "we defer to the trial court's judgment on such issues as resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence." <u>Cook v. Sullivan</u>, 149 N.H. 774, 780 (2003). "If the court's findings can reasonably be made on the evidence presented, they will stand." <u>In the Matter of Letendre & Letendre</u>, 149 N.H. 31, 36 (2002).

The record demonstrates that the trial court reviewed the parties' conduct since their 2019 divorce and the challenged conduct that resulted in the allegations of contempt, namely Husband's alleged failure to pay Wife "one-half" of Husband's "Etrade Options" owned as of May 30, 2019, as required by paragraph 11 of the parties' permanent stipulation. <u>See</u> <u>In the Matter of</u>

<u>Giacomini & Giacomini</u>, 150 N.H. 498, 501 (2004). Paragraph 11 of the parties' permanent stipulation provides with regard to Husband's vested stock options:

> [Wife] and [Husband] have agreed to split 50/50 the stock options [Husband] owned as of May 30, 2019 in the amount of $1,279,342.00. [Wife] is awarded one-half of the Etrade Options in the amount of $639,671.00. [Husband] will arrange for the Options to be transferred to [Wife's] individual Etrade account. [Wife] shall solely be responsible for any and all costs related to the sale of these assets including but not limited to any tax implications.

In paragraph 11, the parties also agreed "to split 50/50 the vested stock that [Husband] owned as of May 30, 2019 in the amount of $1,298,539.00." Under paragraph 11, Wife was awarded "one-half of the Etrade Vested Stock in the amount of $649,269." As with Husband's vested stock options, Wife was "solely responsible for any and all costs related to the sale of these assets including but not limited to any tax implications." Husband was required to "arrange for the Vested Stock to be transferred to [Wife's] individual Etrade account."

Shortly after the parties divorced, Husband transferred to Wife 3,065 shares of vested stock. He also attempted to transfer his vested stock options, but was told by his employer that he could not transfer vested stock options to non-employees. According to Husband, he was also told that the only way to accomplish the transfer would be for him to exercise his stock options, which would be taxed to him as ordinary income, requiring him to incur tax liability. According to Husband, under the parties' permanent stipulation, Wife would be responsible for paying those taxes. Husband also averred that because of insider trading rules, he could not trade securities between the dates of December 15, 2019, and March 1, 2020. In December 2019, Husband sent Wife an email explaining the above. Wife brought the instant motion for contempt in March 2020. In April 2020, Husband transferred to Wife 2,400 shares of vested restricted stock.

The parties' dispute centered upon whether paragraph 11 required Husband to transfer to Wife one-half of the stock options he owned as of May 30, 2019, or whether it required him to transfer one-half of the value of the stock options he owned as of May 30, 2019. Wife contended that paragraph 11 required the former, while Husband contended that it required the latter. The trial court agreed with Husband's interpretation of paragraph 11, finding his testimony "more persuasive regarding the intent of the parties, and their compliance." The court found "that the parties intended to divide the value of the stock options as of a certain date."

On appeal, Wife argues that the trial court's interpretation of paragraph 11 is mistaken. She contends that the court "ignored the plain language of the permanent stipulation," effectively re-writing it in the process. She also contends that Husband's interpretation of the paragraph was not credible given that, in November 2019, he "transferred 50% of the number of shares of stock in his account" to her.

"When a dispute arises concerning the nature of provisions within a stipulation, we must consider the intent of the parties." In the Matter of Patient & Patient, 170 N.H 252, 253-54 (2017) (quotation omitted). Absent ambiguity, the parties' intent will be determined by the plain meaning of the language used in the agreement. See id. at 254. The interpretation of an agreement, including whether a provision is ambiguous, is ultimately a question of law for this court. Sherman v. Graciano, 152 N.H. 119, 121 (2005). Therefore, we review the trial court's interpretation of the agreement de novo. Id.

The language of an agreement is ambiguous if the parties to the agreement could reasonably disagree as to the meaning of that language. In the Matter of Taber-McCarthy, 160 N.H. 112, 115 (2010). If the agreement's language is ambiguous, it must be determined, under an objective standard, what the parties, as reasonable people, mutually understood the ambiguous language to mean. Id. In applying the objective standard, the court should examine the contract as a whole, the circumstances surrounding its execution, and the object intended by the agreement, while keeping in mind the goal of giving effect to the intention of the parties. Id. at 115-16. "This process necessarily involves factual findings" to which we defer if supported by the evidence. N.A.P.P. Realty Trust v. CC Enterprises, 147 N.H. 137, 141 (2001).

Here, we conclude that paragraph 11 is ambiguous as the parties could reasonably disagree as to whether it required Husband to transfer one-half of his stock options or whether it required him to transfer one-half of the value of his stock options. Having concluded that paragraph 11 is ambiguous, we uphold the trial court's findings that, when the parties negotiated their stipulation, they intended Husband to transfer the value of the stock options because those findings are supported by the record. The trial court found Husband's testimony credible, and we defer to the trial court's credibility determinations. See Cook, 149 N.H. at 780.

Alternatively, Wife argues that Husband failed to transfer 50% of the value of his stock options to her. According to Wife, the shares transferred to her must be valued as of the date they were transferred. She asserts that when Husband transferred 3,065 shares to her in November 2019, they were worth $656,001.95, and when he transferred 2,400 shares to her in April 2020, they were worth $571,200.00. Therefore, Wife reasons that the total value of the shares transferred was $1,227,201.95, $61.738.05 less than the value

Husband was supposed to have transferred. According to Husband, who values the shares as of April 2020, the total market value of the shares of stock he eventually transferred to Wife was $1,300,670, an amount exceeding $1,288,940, the amount required by paragraph 11.

"Determining the value of any given asset is left to the sound discretion of the trial court." In the Matter of Chamberlin & Chamberlin, 155 N.H. 13, 16 (2007). Here, we cannot say that the trial court unsustainably exercised its discretion by crediting Husband's figures over Wife's figures.

Wife observes that "even under [Husband's] own theory, he violated the court order, as [he] delayed transferring to [her] the total amount he owed her until April 30, 2020." Wife argues that the delay caused her to sustain financial injury. However, the trial court was not compelled to make that finding. Nor was it compelled to find Husband in contempt. See In the Matter of Giacomini & Giacomini, 150 N.H. at 501. For all of the above reasons, we conclude that the trial court did not unsustainably exercise its discretion by failing to do so. See id.

Affirmed.

MacDonald, C.J., and Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**

4