Sullivan
No. 96-101

## Bryan K. Galloway

v.

## Chicago-Soft, Ltd.

May 11, 1998

*Bragdon, Berkson, Davis & Klein, P.C.*, of Keene (*H. Neil Berkson* on the brief and orally), for the plaintiff.

*Brooks McNally Whittington Platto & Vitt, P.C.*, of Hanover (*W.E. Whittington IV* on the brief, *Geoffrey Judd Vitt* and *Eric D. Jones* on the reply brief, and *Mr. Vitt* orally), for the defendant.

JOHNSON, J. The defendant, Chicago-Soft, Ltd., appeals, and the plaintiff, Bryan K. Galloway, cross-appeals, the decision of the Superior Court (*Brennan*, J.) awarding the plaintiff commissions, liquidated damages, and attorney's fees arising from a wage claim made by the plaintiff against the defendant, his former employer. We affirm in part, reverse in part, vacate in part, and remand to the department of labor.

Galloway was hired as national sales manager by Chicago-Soft in November 1992. His compensation package included salary and commissions on the sales of various product lines. On August 2, 1994 (termination date), Chicago-Soft terminated Galloway's employment. Chicago-Soft initially paid Galloway his salary through the termination date and commissions based upon "receipts" as of July 31, 1994. Galloway then filed two statutory wage claims with the department of labor (DOL), *see* RSA 275:51 (1987) (amended 1995, 1997), seeking unpaid salary, commissions, profit sharing and vacation benefits, an unpaid bonus, and severance pay. An initial award by the DOL was reversed and remanded by the superior court. The ensuing second award by the DOL was reversed a second time by the superior court, which held, *inter alia*, that Galloway was entitled to commissions on sales collected through August 31, 1994,

liquidated damages on unpaid salary, vacation, and commissions, and reasonable attorney's fees. This appeal followed.

On appeal, both parties dispute the superior court's award of commissions on sales collected through August 1994. Chicago-Soft also argues that the superior court erred when it awarded liquidated damages and attorney's fees. Galloway contends that the superior court erred in denying his claim for statutory interest and in refusing to award the proper amount of attorney's fees.

## I. Commissions

The superior court ruled that Galloway was entitled to commissions on sales collected through the month of August 1994. Both parties contend that the trial court's ruling was erroneous. Chicago-Soft argues that the court improperly substituted its own findings of fact for those of the DOL, which held that Galloway was entitled to commissions on collections only through the termination date. Galloway argues that the court erred in not awarding commissions on all sales closed before the termination date and in failing to award commissions on sales pending at termination and later closed. We hold that, as a matter of law, Galloway was entitled to commissions on sales closed by the termination date. We accordingly reverse the ruling of the superior court and remand this action to the DOL for a calculation of commissions due.

The dispute centers on a letter agreement sent to Galloway by Chicago-Soft's president in which he stated that Galloway's compensation would be calculated as follows:

1. A base annual salary of $50,000 paid once a month at the end of each month.

2. Commissions on all sales (both those closed by [the former sales manager] and the ones closed by you) will be:

 a. Starting for sales collected in the month of January commissions will be paid at a rate of 3% on the first $2,000,000 of the net sales revenue collected . . . .

 b. Once the revenue exceeds $2,000,000 during any calendar year the commission rate will be 4% of all those sales in excess of the $2,000,000 range.

 c. If sales exceed $3,000,000 during any calendar year the commission rate on the sales in excess of $3,000,000 will be paid at a rate of 5%.

 d. If sales exceed $4,000,000 during any calendar year the commission rate paid on the amount in excess of $4,000,000 will be 6%.

Neither side contests that this letter formed the operating agreement regarding the terms of Galloway's employment. They contest, however, whether the terms of the agreement mean that Galloway should receive commissions on sales *closed* as of his termination date, or sales *collected* as of his termination date.

 ■ "As a general rule, the proper interpretation of a contract is ultimately a question of law for this court, and we will determine the meaning of the contract based on the meaning that would be attached to it by reasonable persons." *Gamble v. University of New Hampshire*, 136 N.H. 9, 13, 610 A.2d 357, 360 (1992) (quotation and brackets omitted). Where, however, the contract terms are ambiguous, and the fact finder below has properly looked to extrinsic evidence to determine the intent of the parties, *see Holden Eng'g and Surveying v. Pembroke Rd. Realty Trust*, 137 N.H. 393, 396, 628 A.2d 260, 262 (1993); *Parkhurst v. Gibson (Parkhurst)*, 133 N.H. 57, 61-62, 573 A.2d 454, 457 (1990), our standard of review is more deferential. *See Baker v. McCarthy*, 122 N.H. 171, 175, 443 A.2d 138, 140 (1982); *cf. Keshishian v. CMC Radiologists*, 142 N.H. 168, 177, 698 A.2d 1228, 1234 (1997). In those cases, the question of a contract term's meaning "should be left to the trier of facts unless the meaning of the extrinsic evidence is so clear that reasonable men could only reach one conclusion." *Erin Food Servs., Inc. v. 688 Props.*, 119 N.H. 232, 235, 401 A.2d 201, 203 (1979). Whether a contract term is ambiguous, however, is a question of law for this court to decide. *Echo Consulting Services v. North Conway Bank*, 140 N.H. 566, 569, 669 A.2d 227, 230 (1995).

 ■ We review the parties' employment agreement in light of the special rules that have developed with respect to the interpretation of commission sales employment contracts. *See, e.g., Oken v. National Chain Co.*, 424 A.2d 234, 235-36 (R.I. 1981).

 As a general rule, a person employed on a commission basis to solicit sales orders is entitled to his commission when the order is accepted by his employer. The entitlement to commissions is not affected by the fact that payment for those orders may be delayed until after they have been shipped. This general rule may be altered by a written agreement by the parties or by the conduct of the parties

which *clearly* demonstrates a different compensation scheme.

*Vector Engineering & Mfg. Corp. v. Pequet*, 431 N.E.2d 503, 505 (Ind. Ct. App. 1982) (citations omitted) (emphasis added). If an employer intends for commissions to be calculated differently, either the contract language or the employer's acts must unambiguously demonstrate a departure from the general rule; otherwise, the employee is entitled to commissions on sales closed as a matter of law. *Id. See generally Oken*, 424 A.2d at 235-36; *Diana v. Burnside Motors, Inc.*, 304 A.2d 222, 224 (Conn. App. Ct. 1973).

[3] In the instant case, both the contract terms and the conduct of the parties demonstrate, as a matter of law, that Galloway is entitled to commissions on sales closed as of his termination date. The plain language of the employment agreement sets forth that Galloway was to be paid on sales closed, both those "closed by [Galloway]" and by his predecessor. Furthermore, while the contract bases the *applicable commission rate* on sales collected during the calendar year, the contract never indicates that *entitlement* to those commissions will be based on any measure other than sales closed. *Cf. Slusher v. Mid-America Broadcasting*, 811 S.W.2d 443, 446-47 (Mo. Ct. App. 1991) (holding employee not entitled to commissions where contract unambiguously stated that commissions not paid when sales closed). Finally, the contract never explicitly states that Galloway would be divested of any entitlement to commissions on sales closed by virtue of his termination. *See id.* at 446.

Furthermore, even assuming that the extrinsic evidence presented was properly admitted, *cf. Parkhurst*, 133 N.H. at 61-62, 573 A.2d at 457 (noting that if contract terms unambiguous, parol evidence rule bars extrinsic evidence); *Holden Eng'g and Surveying*, 137 N.H. at 396, 628 A.2d at 262 (finding extrinsic evidence improperly admitted where contract language clear), it was not reasonable for either the superior court or the DOL to rule as it did. *See Baker*, 122 N.H. at 175, 443 A.2d at 140 (court will uphold trier of fact unless unsupported by the evidence). Specifically, shortly after Galloway filed his wage claim with the DOL, Chicago-Soft's legal representative, acting at the direction of Chicago-Soft's president, wrote a letter to the DOL stating:

Mr. Galloway was paid commissions on those amounts received by Chicago-Soft which represent "new sales." It is difficult to determine what will be owed until such time as the customers actually pay. . . . We will be attempting to

determine what the actual number is as the collection process continues.

Accordingly, we hold that as a matter of law, neither the employment agreement nor the conduct of the parties clearly indicated a specific contractual departure from the general rule that employees paid on a commission basis *earn* commissions when their employer accepts an order. While over the term of Galloway's employment, commissions were paid as the company made collections on invoices, we conclude that such evidence is not clearly indicative of whether an agreement existed whereby Galloway *earned* commissions when sales were collected. *See Oken*, 424 A.2d at 236 (evidence that employee not paid commissions until shipped not clear proof of departure from general rule, but reflection of internal accounting practices); *cf. Vector*, 431 N.E.2d at 505 (evidence that employee did not demand payment when order accepted showed only that employee recognized that entitlement could be divested if order subsequently cancelled). We therefore vacate the order of the superior court and remand this case to the DOL for a determination of commissions owed based on sales closed as of the termination date and subsequently collected. *See id.* (employee's right to commissions divested if order subsequently cancelled).

## *II. Liquidated Damages*

The superior court awarded liquidated damages to Galloway. The relevant statute, RSA 275:44, IV (1987), provides in pertinent part: "If an employer willfully and without good cause fails to pay an employee wages as required [by the statute] . . . such employer shall be additionally liable to the employee for liquidated damages . . . ." Chicago-Soft claims that the superior court misapplied the willfulness standard and substituted its own factual finding of willfulness for that of the DOL. RSA 275:51, V (1987) (amended 1997) provides: "Any party aggrieved by [the decision of the DOL] may appeal to the superior court . . . . The scope of review by the superior court shall be limited to questions of law." Accordingly, Chicago-Soft argues that the superior court erred because the DOL determined in its initial order that Galloway failed to prove that Chicago-Soft acted willfully and without good cause pursuant to RSA 275:44, IV.

In light of our determination that both the DOL and the superior court erred as a matter of law with respect to commissions due Galloway, it would be speculative for us to determine whether

the superior court properly ruled that Galloway was owed liquidated damages. *See Ives v. Manchester Suburu, Inc.*, 126 N.H. 796, 802-03, 498 A.2d 297, 302 (1985) (remanding for a determination of willfulness based on court's holding that disputed sums constituted wages under statute). We accordingly vacate the court's order with respect to liquidated damages, and direct the DOL on remand to determine "willfulness" in light of our holding that Galloway is due commissions on sales closed as of his termination date. *See id.* While in theory we could rule with respect to liquidated damages on unpaid vacation and salary, we believe that in this instance, a determination of willfulness should not be segmented by compensation type, but should be determined in light of Galloway's entire compensation package. Thus, we remand the entire issue to the DOL for an appropriate determination.

## III. Attorney's Fees

Both parties contest the trial court's award of attorney's fees to Galloway. First, Chicago-Soft argues that because Galloway elected to pursue a wage claim with the DOL pursuant to 275:51, V, he is not entitled, by statute, to an award of attorney's fees. Rather, Chicago-Soft asserts that only under a direct superior court action, *see* RSA 275:53, I, III (1987), can fees be awarded.

Chicago-Soft asks us to strictly construe the wage claim statute such that Galloway is not entitled to fees. We reject any strict construction of the statute if it contravenes the legislation's intended purpose. *See Nashua Y.W.C.A. v. State*, 134 N.H. 681, 684-85, 597 A.2d 535, 537 (1991). We construe RSA chapter 275 in general, and RSA 275:53, III in particular, to effectuate the broad purpose of protecting employees. *See Gilman v. County of Cheshire*, 126 N.H. 445, 450, 493 A.2d 485, 489 (1985) (attorney's fees awarded under RSA 275:53, III despite defendant's argument that action was not brought pursuant to that statute).

> [W]e recognize that the size of many wage claims is so small that the practical value of a plaintiff's verdict is often decidedly modest after counsel's fee has been deducted from the recovery. Accordingly, we hold that when the court has found a wage claim meritorious, it should exercise its statutory discretion by awarding reasonable counsel fees, unless the court further finds particular facts that would render such an award inequitable.

*Ives,* 126 N.H. at 804, 498 A.2d at 303. The superior court found that Galloway had a valid claim for unpaid wages, and Chicago-Soft does not claim that an award of attorney's fees would be inequitable. Accordingly, we find no error in the award of attorney's fees.

■ Galloway, in his cross-appeal, argues that the superior court failed to award the correct amount of fees. We review the superior court's decision regarding the award of attorney's fees for an abuse of discretion. *See Town of Swanzey v. Liebeler,* 140 N.H. 760, 764, 674 A.2d 968, 971 (1996). "In applying the abuse of discretion standard, we look for some support in the record for the trial court's decision, and keep in mind the tremendous deference given to a lower court's decision on attorney's fees." *Id.* (quotations and citation omitted). Galloway contends that the trial court erred by awarding legal fees based on actual hours worked and billed at the firm's "regular" rates. He argues that the court should have awarded fees on the "contingency fee" basis as agreed to by Galloway and his attorneys whereby the firm would receive compensation for actual hours worked, but at a significantly higher hourly rate for both the attorneys' time and that of the administrative staff. Thus, the court awarded fees totaling $22,871.51 instead of the $30,822.81 figure Galloway requested. The trial court held that while the contingency fee agreement was reasonable between Galloway and his attorneys, it was not an appropriate measure as to the fees owed by Chicago-Soft. On the record presented to us, we cannot conclude that the court's determination was erroneous. While it is true that the purpose of awarding attorney's fees is "the practical vindication of the plaintiff's statutory rights," *Ives,* 126 N.H. at 804, 498 A.2d at 303, we do not regard the trial court's award in this case, which was based on actual hours worked and billed at the firm's "regular" hourly rates, as frustrating this goal. *Cf. Seppala & Aho Constr. Co. v. Elton,* 119 N.H. 634, 636-37, 406 A.2d 460, 462 (1979) (trial judge's refusal to award entire contingency fee was proper and did not frustrate intent of attorney's fees provision in workers' compensation statute).

## IV. Statutory Interest

Finally, Galloway contends that he is entitled to statutory interest under RSA 524:1-b (1997). The superior court denied his request, stating that the "interest provision [of] RSA 524:1-b does not fit this remedial legislation." RSA 524:1-b provides that in certain civil proceedings "in which a verdict is rendered or a finding is made for pecuniary damages to any party, . . . there shall be added . . . to

the amount of damages interest thereon from the date of the writ or the filing of the petition to the date of such verdict or finding."

 Although we have held that this provision is inapplicable to workers' compensation cases because "the workman's rights are both created and measured by statute . . . and that the Workman's Compensation Law . . . contained no provision expressed or reasonably to be implied that interest was to be allowed," *Hanchett v. Brezner Tanning Co.*, 107 N.H. 236, 240, 221 A.2d 246, 249 (1966), wage claims, unlike workers' compensation claims, existed at common law. "Where reasonably possible, statutes should be construed as consistent with each other." *Appeal of Derry Educ. Assoc.*, 138 N.H. 69, 71, 635 A.2d 465, 466 (1993) (citations omitted). Furthermore, when construing two statutes that deal with similar subject matter — in this instance remedies for civil damages — we will interpret them in such a way as to best effectuate the statutes' legislative purpose. *Petition of Public Serv. Co. of N.H.*, 130 N.H. 265, 282, 539 A.2d 263, 273 (1988), *appeal dismissed*, 488 U.S. 1035 (1989). The purpose of statutory interest is to compensate plaintiffs for the lost use of money improperly withheld by defendants. *See Lakin v. Daniel Marr & Son, Co.*, 732 F.2d 233, 238 (1st Cir. 1984). As stated earlier, we broadly construe the provisions of the wage claim statute in order to best protect the interests of employees in being compensated for wages due. *Ives*, 126 N.H. at 802, 498 A.2d at 303. Accordingly, we conclude that vindication of employees' rights is furthered by the award of statutory interest and that it would be inconsistent with our broad reading of the wage claim statute to hold that Galloway is not entitled to a statutory interest award. Further, Chicago-Soft's argument that the purposes of the statutory interest award are satisfied by the liquidated damages provision of RSA chapter 275 is unpersuasive. Liquidated damages are only awarded where an employer has acted willfully and without good cause. RSA 275:44, IV. Hence, an employee's recovery under that provision is not based on the lost use of money, but rather upon the willful conduct of the employer. Accordingly, we reverse the ruling of the superior court and remand the issue to the DOL for a calculation of interest due.

*V. Conclusion*

Because of the nature of the remand required for compliance with this opinion, we remand this case to the DOL for a calculation of commissions owed on sales closed through August 2, 1994, for a determination of whether liquidated damages should be awarded, and

for a calculation of the appropriate amount of statutory interest. We affirm the award of attorney's fees. We affirm the award of unpaid wages and vacation pay because they were not challenged on appeal.

*Affirmed in part; reversed in part; vacated in part; remanded to the department of labor.*

All concurred.