Rockingham
No. 2006-586

### THE DEMERS AGENCY

v.

### TAMI CHILDS WIDNEY

Argued: April 19, 2007
Opinion Issued: July 17, 2007

*Coughlin, Rainboth, Murphy & Lown, P.A.*, of Portsmouth (*Kenneth D. Murphy* on the brief and orally), for the petitioner.

*Krans Law Firm*, of Dover (*Hamilton R. Krans, Jr.* on the brief and orally), for the respondent.

BRODERICK, C.J. The petitioner, the Demers Agency (agency), appeals an order of the Superior Court (*Morrill*, J.) affirming a decision of the New Hampshire Department of Labor (DOL) to award the respondent, Tami Childs Widney, unpaid wages and liquidated damages. The agency also appeals the trial court's decision to award Widney her attorney's fees, costs and interest. We affirm.

I

The DOL hearing officer found the following facts. Widney worked for the agency from March 2003 to February 2005. Her agreed-upon compensation package included an annual base salary, quarterly bonuses based upon sales and a year-end bonus based upon the agency's profitability for the year. At the end of the first quarter of 2004, Widney received a year-end bonus for her work during 2003, pro-rated due to the fact that she started with the agency in March of that year. In December 2004, the agency's owner, Chris Demers (Demers), told Widney that if the agency met a specific sales goal before year end, she would receive a bonus of $9,475. In January 2005, when Widney asked Demers what her 2004 bonus would be, Demers told her that because the agency had missed its goal, her bonus would be only $7,106.25. The following month, Widney took a job with another insurance agency, approximately six weeks before the date on which Demers typically distributed year-end bonuses. After Widney left, she asked Demers for her 2004 year-end bonus. He refused, explaining that bonuses were only paid to employees who were still working for the agency on the date bonuses were distributed. The record includes an e-mail from Demers to Widney, dated March 4, 2005, in which he communicated his refusal to pay her a year-end bonus for 2004.

Regarding the mechanics for payment of the agency's year-end bonuses, the evidence before the hearing officer demonstrates the following. For several years, Nationwide Insurance Company (Nationwide) paid Demers, who is a Nationwide agent, a bonus based upon the agency's loss ratio, *i.e.*, the relationship between the amount of money collected in premiums and the amount paid out in claims. It took Nationwide up to six weeks after the end of each calendar year to calculate an agency's loss ratio for that year.

Generally, Demers received his bonus from Nationwide on or about March 31, but he knew the loss ratio which was used to determine his bonus before the bonus was actually distributed to him. After Demers received his Nationwide bonus, he routinely paid a part of it to the agency's employees, based upon his appraisal of their particular contributions to the agency's success. The employees received their year-end bonuses shortly after Demers received his bonus from Nationwide, generally on or about March 31.

When Demers refused to pay Widney her year-end bonus for 2004, she filed two claims with the DOL, seeking unpaid wages under RSA 275:43, I (1999) and liquidated damages under RSA 275:44, IV (1999). The DOL hearing officer found that Widney "carried her burden to show that the [year-end] bonus due [for 2004] was part of her salary package," thus qualifying it as "wages" for purposes of RSA 275:43, I. Accordingly, the hearing officer ruled that she had "proved by a preponderance of the evidence that she was due wages ... in the amount of $7,106.25." He further ruled that Widney was entitled to liquidated damages in the amount of $7,106.25, based upon a finding that "the employer did not have good cause to withhold the [bonus] and was willful in his actions." Demers appealed to the superior court, which affirmed the DOL decision and also awarded attorney's fees in the amount of $2,813 and interest. This appeal followed.

## II

"Any party aggrieved by the decision [of the DOL in a wage claim] may appeal to the superior court ... by petition, setting forth that the decision is erroneous, in whole or in part, and specifying the grounds upon which the decision is claimed to be in error." RSA 275:51, V (Supp. 2006). "The scope of review by the superior court shall be limited to questions of law." *Id.* "After hearing and upon consideration of the record, the court may affirm, vacate or modify in whole or in part the decision of the commissioner, or may remand the matter to the commissioner for further findings." *Id.* We, in turn, review *de novo* the trial court's decisions on questions of law. *See, e.g., OB/GYN Assocs. of S.N.H. v. N.H. Ins. Guaranty Assoc.*, 154 N.H. 553, 561 (2006); *Behrens v. S.P. Constr. Co.*, 153 N.H. 498, 500 (2006).

## III

The agency's first four arguments on appeal focus upon various aspects of the trial court's decision concerning Widney's entitlement to the disputed bonus. The agency asserts three challenges to the sufficiency of the evidence, arguing that the trial court erred by: (1) affirming the DOL's

finding that the disputed bonus was a part of Widney's agreed-upon compensation; (2) ignoring the agency's policy that year-end bonuses were paid only to employees still working for the agency on or about March 31 of the following year; and (3) affirming the DOL's finding that Widney had earned the disputed bonus simply by working until December 31, 2004. The agency also argues that the trial court erred by determining that the disputed bonus qualified as wages under RSA 275:43, I.

In the trial court, the sufficiency of the evidence supporting the DOL's factual findings was a question of law. *See Miller v. Blackden*, 154 N.H. 448, 455 (2006). The trial court was entitled to uphold the findings and rulings of the DOL unless they were lacking in evidentiary support or tainted by error of law. *Id.*

The DOL's factual findings related to Widney's entitlement to the disputed bonus were not lacking in evidentiary support. First, Widney testified that at the time she was hired, Demers described her compensation as consisting of a base salary, quarterly bonuses, and a year-end bonus. That Demers presented conflicting testimony does not mean that the hearing officer's finding lacked evidentiary support. Regarding the existence of an agency policy requiring an employee to remain employed for an additional three months after the end of the year for which year-end bonuses are paid, Demers testified that Widney was his "right hand," and Widney testified that she knew nothing of any such policy. That is evidentiary support for the DOL's finding that Demers was without discretion to condition payment of Widney's bonus upon factors other than the agency's performance, and Widney's contribution to that performance, during 2004. Finally, Widney testified that in January 2005, Demers told her that her 2004 year-end bonus would be $7,106.25, based upon the agency's failure to achieve the goal that would have provided her with a bonus of $9,475. Widney's testimony concerning her January conversation with Demers about the 2004 bonus provides evidentiary support for the DOL's finding that Widney earned the disputed bonus through her work in 2004.

Because all of the DOL's factual findings concerning the disputed bonus had evidentiary support, the trial court did not err by affirming them. Accordingly, we turn to the remaining question of law before the trial court; namely, whether the bonus qualified as wages for purposes of RSA chapter 275.

That statute defines "wages" to mean "compensation . . . for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission, or other basis of calculation." RSA 275:42, III (1999). Based upon the hearing officer's factual determination that

Widney's year-end bonus was a part of the compensation the agency paid her for her services, the trial court correctly ruled that Widney's bonus qualified as wages under RSA 275:42, III. Stated in the terms of the statute, that bonus was compensation for Widney's services to the agency, determined on a basis of calculation other than time, task, piece or commission. Our determination that the bonus qualified as wages is consistent with our previous decisions concerning forms of compensation that employers have attempted to exclude from the category of wages. *Cf. Ives v. Manchester Subaru, Inc.*, 126 N.H. 796, 800 (1985) (holding that agreed-upon profit sharing "fall[s] within [RSA 275:42, III's] reference to compensation calculated on some 'other basis'" notwithstanding that the profit-sharing agreement "did not provide a stated date or certain time for payment of the share"); *Galloway v. Chicago-Soft*, 142 N.H. 752, 756-57 (1998) (holding, in case involving contract interpretation, that a former employee was entitled to commissions on sales closed before his termination date, notwithstanding that his employer did not receive payment for those sales until after termination date).

■ The agency suggested, at oral argument, that no form of compensation an employer calls a bonus can be classified as wages because the term "bonus" does not appear in RSA 275:43, III (1999). That statute provides that "[v]acation pay, severance pay, personal days, holiday pay, sick pay and payment of employee expenses, when such benefits are a matter of employment practice or policy, or both, shall be considered wages pursuant to RSA 275:42, III, when due." RSA 275:43, III. Absence of the term "bonus" from the list of benefits in RSA 275:43, III does not mean that a bonus cannot be wages; the statute does not purport to define the term "wages," but, instead, simply specifies the circumstance, *i.e.*, "when due," under which certain benefits are to be treated as wages. Thus, as we have said, under the appropriate statutory definition, *see* RSA 275:42, III, the trial court correctly ruled that the bonus in this case qualified as wages.

■ By affirming the trial court's determination that the bonus in this case qualified as wages, we do not hold that every bonus paid by an employer qualifies as wages for purposes of RSA chapter 275, and we do not hold that an employer could not condition payment of a bonus upon continued employment for some stated term. In other words, we see no legal infirmity in the bonus system Demers said was in place at the agency. Our holding is limited to those circumstances in which a bonus is part of an agreed-upon compensation package and the employee has performed all of the duties necessary to trigger the employer's obligation to pay the bonus.

We express no opinion as to the legal status of a bonus that is entirely gratuitous because that issue is not before us in this case.

## IV

The agency's next two arguments concern the trial court's affirmance of the DOL's award of liquidated damages. Specifically, the agency argues that the trial court erred by: (1) affirming the DOL's finding that the agency had willfully and without good cause failed to pay Widney her bonus; and (2) ruling that the liquidated damages provision of RSA chapter 275 applies in the circumstances of this case.

We begin by describing the relevant statute. RSA 275:44 (1999) pertains to the payment of wages to employees separated from employment before their paydays. Specifically, the statute provides that "[w]henever an employee quits or resigns, the employer shall pay the employee's wages no later than the next regular payday." RSA 275:44, II. It further provides:

> If an employer willfully and without good cause fails to pay an employee wages as required under paragraphs I, II or III of this section, such employer shall be additionally liable to the employee for liquidated damages in the amount of 10 percent of the unpaid wages for each day except Sunday and legal holidays upon which such failure continues after the day upon which payment is required or in an amount equal to the unpaid wages, whichever is smaller . . . .

RSA 275:44, IV. In the context of the foregoing statute, we have construed the term "willfully" to mean voluntarily, with knowledge of the obligation and despite the financial ability to pay it. *Ives*, 126 N.H. at 801.

The agency challenges the sufficiency of the evidence supporting the DOL's determination that Demers withheld Widney's bonus willfully and without cause. As we have already held, the hearing officer had before him evidence to support findings that: (1) Widney earned her 2004 year-end bonus exclusively through work she performed for the agency in 2004; (2) Demers told Widney, in January 2005, what her 2004 bonus would be, based upon the agency's actual performance in 2004; and (3) the agency had no policy requiring continuing employment as a qualification for being paid a year-end bonus that had already been earned. Moreover, the DOL had before it: (1) an e-mail in which Demers called Widney's departure from the agency "very un-professional"; and (2) testimony from Demers describing the extensive training he provides his employees. That evidence is sufficient to support the DOL's finding that Demers knew the agency owed Widney her bonus and withheld it "only because he was upset with [her] moving on to other employment" after he had invested so much time

and effort in her training. Moreover, the hearing officer heard testimony that Demers received a bonus of approximately $62,000 from Nationwide for 2004, thus providing evidentiary support for a finding that the agency was able to pay Widney the $7,106.25 Demers told her she would receive in January 2005.

■ Because there is evidence to support the DOL's finding that the agency withheld Widney's bonus knowingly, with the ability to pay it and without good cause, the trial court did not err by affirming that finding. Accordingly, we turn to the agency's contention that RSA 275:44 does not apply to the circumstances of this case. Because the bonus in this case was a part of Widney's wages, then, necessarily, RSA 275:44 applies, notwithstanding any possible difficulty in determining the exact payday for this form of wages, *see Ives*, 126 N.H. at 800-01, or the fact that Demers was not due to receive his bonus from Nationwide until after the date that Widney quit, *see Galloway*, 142 N.H. at 756-57.

## V

The agency's final argument is that the trial court erred in awarding Widney attorney's fees and interest. Specifically, it argues that: (1) an award of attorney's fees was unlawful because this case was an appeal under RSA 275:51 (Supp. 2006) rather than a direct action in the superior court under RSA 275:53 (1999); (2) an award of attorney's fees is inequitable because the law was unsettled and because Demers acted in good faith by following an established and well-known company policy when he refused to pay Widney her bonus; and (3) the amount of attorney's fees awarded was unreasonable because it was based upon a flat fee rather than actual time expended. The agency also asserts that the trial court erred in awarding interest because the DOL did not do so, and such an award is not authorized by RSA chapter 275. We disagree.

■ Notwithstanding the agency's legal arguments to the contrary, attorney's fees and interest are available in superior court appeals under RSA 275:51. *See Galloway*, 142 N.H. at 759-60, 761.

Regarding the agency's remaining arguments, we review the trial court's award of attorney's fees under our unsustainable exercise of discretion standard. *In the Matter of Hampers & Hampers*, 154 N.H. 275, 290 (2006). We construe RSA chapter 275 in general, and the attorney's fees provision in particular, to effectuate the broad purpose of protecting employees. *See Galloway*, 142 N.H. at 759. Moreover, we have held that when the court has found a wage claim meritorious, it should exercise its statutory discretion by awarding reasonable counsel fees, unless the court further finds particular facts that would render such an award inequitable.

*Id.* We cannot say, on the record before us, that the trial court unsustainably exercised its discretion by concluding that the agency advanced no facts rendering an award of attorney's fees inequitable. This is especially so in light of the trial court's recitation of the hearing officer's finding that "Demers had 'no reason to withhold the [year-end bonus] and seems to have done so only because [Demers] was upset with [Widney for] moving on to other employment.'"

Similarly, we find no fault with the trial court's determination of the amount of attorney's fees it awarded. In applying the unsustainable exercise of discretion standard, we look for some support in the record for the trial court's decision, and keep in mind the substantial deference accorded a trial court's decision on attorney's fees. *Id.* at 760. Here, the agency does not dispute that Widney's attorney charged her a flat rate of $2,500, but argues that Widney's counsel did not submit documentation of the time he actually spent on the case and that a $2,500 fee was unreasonable for a case involving a single structuring conference and a one-hour hearing. Widney, in turn, contends that the flat fee she paid her counsel would be far exceeded by a fee based upon her attorney's regular hourly rate. The record before the trial court showed that in connection with the agency's appeal from the DOL decision, Widney's counsel: (1) drafted and filed an answer to the agency's appeal, an amended answer and an objection to the agency's motion for reconsideration; (2) attended a structuring conference; and (3) prepared for and participated in a one-hour hearing. Based upon the amount of work reflected by the record before the trial court, we cannot say that the trial court unsustainably exercised its discretion by determining that $2,500 was a reasonable attorney's fee.

*Affirmed.*

DALIANIS, DUGGAN, GALWAY and HICKS, JJ., concurred.