NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
Nos. 2013-779
       2013-780


ICHIBAN JAPANESE STEAKHOUSE, INC.

v.

KYMBERLY ROCHELEAU

ICHIBAN JAPANESE STEAKHOUSE, INC.

v.

SAMANTHA GREANEY

Argued:  October 9, 2014
Opinion Issued:  November 13, 2014


Tarbell & Brodich Professional Association, of Concord (Friedrich K. Moeckel on the brief and orally), for the petitioner.


Law Office of Kenneth J. Barnes, of Concord (Kenneth J. Barnes on the brief and orally), for the respondents.


DALIANIS, C.J.  In these consolidated appeals, the petitioner, Ichiban Japanese Steakhouse, Inc. (employer), appeals orders of the Superior Court

(McNamara, J.) upholding the determinations of the New Hampshire Department of Labor (DOL) that the respondents, Kymberly Rocheleau and Samantha Greaney (employees), were entitled to lost wages and attorney's fees because the employer's tip pooling arrangement violated RSA 279:26-b (2010) (amended 2012).  We affirm.

The DOL found, or the record establishes, the following facts.  The employer hired the employees as wait staff for its restaurant in August 2010.  When they applied for the jobs, they were given a packet of documents, including a tip pooling agreement, to review.  The agreement required wait staff to give approximately 60% of their tips to other employees and specified the percentage of tips that were to be given to other employees depending upon where in the restaurant the wait staff worked.  For instance, the agreement stated that when wait staff worked in the hibachi grill area, they had to give 5% of all liquor sales to the bartenders, and distribute their tips as follows:  5% to the hibachi servers, 5% to the "bussers," and 45% to the hibachi chefs.  Similarly, when working in the sushi area, wait staff were required to give 5% of all liquor sales to the bartenders and 5% of their tips to the bussers, 5% to the sushi bar, and 50% to the sushi chef.  When Rocheleau told the manager of the restaurant that she disagreed with the tip pooling agreement, the manager told her that if she failed to sign the agreement, she could not work at the restaurant.  At Greaney's hearing, the employer's attorney conceded that if Greaney had not signed the tip pooling agreement, she would not have been hired as wait staff, but might have been employed in another position.

Both employees left their jobs at the restaurant in 2011 – Rocheleau on April 30, 2011, and Greaney on May 21, 2011.  Upon leaving their positions, each filed a wage claim with the DOL, seeking to recover lost wages.  Following hearings on their claims, the DOL ruled in favor of the employees.  The employer appealed those determinations to the superior court, which upheld the DOL's decisions.  See RSA 275:51, V (2010).  These consolidated appeals followed.

"Any party aggrieved by [a DOL wage claim] decision may appeal to the superior court . . . by petition, setting forth that the decision is erroneous, in whole or in part, and specifying the grounds upon which the decision is claimed to be in error."  Id.  "The scope of review by the superior court shall be limited to questions of law."  Id.  "After hearing and upon consideration of the record, the [superior] court may affirm, vacate or modify in whole or in part the decision of the commissioner, or may remand the matter to the commissioner for further findings."  Id.  We, in turn, review de novo the trial court's decisions on questions of law.  Grimard v. Rockingham County Dep't of Corr., 161 N.H. 69, 71 (2010).

The employer first argues that its tip pooling arrangement did not violate RSA 279:26-b because "both employees testified that they read, understood

2

and voluntarily signed" the tip pooling agreement.  During the time pertinent to this appeal, RSA 279:26-b provided:

> I.  Tips are wages and shall be the property of the employee receiving the tip and shall be retained by the employee, unless the employee voluntarily and without coercion agrees to participate in a tip pool which is not required and not controlled in any manner by the employer.
>
> II.  If the employee agrees to participate, the employer is not precluded from administering a valid tip pool in which participation is voluntary, not coerced and the employer exercises no control over the manner in which tips are pooled other than for accounting and bookkeeping purposes.

The employer contends that there was no "coercion" within the meaning of the statute because neither employee was "physically coerce[d]" or "pressure[d]" into signing the agreement.

We reject the employer's suggestion that coercion requires application of physical force.  Although the employer argues that the employees signed the tip pooling agreement "voluntarily," the DOL expressly found to the contrary.  In Rocheleau's case, the DOL found credible her testimony that the process was not voluntary and found not credible the employer's "statement that the practice was voluntary."  The DOL credited Rocheleau's testimony that "she felt pressure to sign the agreement or not work at the establishment," and that "there was no way out of the employer's mandated program."  In Greaney's case, the DOL relied upon the employer's admission to find that participating in the tip pooling arrangement was not voluntary, observing that the employer conceded that "a prospective employee would not be hired into a wait staff position if they did not sign the tip distribution sheet agreeing to the disbursement of their tips."  Because these factual findings are not erroneous as a matter of law, they must be upheld.  See RSA 275:51, V.  Moreover, even if the employees were not "coerced" within the meaning of the statute, the employer would still not prevail because, as the DOL found, the employer controlled the tip pooling arrangement.  See RSA 279:26-b, I (a valid tip pooling arrangement is "not controlled in any manner by the employer").

The employer next asserts that the amount of lost wages awarded to the employees was improper.  The DOL awarded Rocheleau $4,214.  At the DOL hearing, Rocheleau produced records and explained, in detail, that she took home only 40% of the tips she earned.  Rocheleau also produced evidence that, in all, she took home approximately $3,426 in tips, which means that her total tips, including the 60% she distributed to other employees, was $8,565.  As $4,214 is less than 60% of $8,565, we conclude that the employer has failed to

demonstrate that the DOL erred, as a matter of law, when it awarded $4,214 in lost wages to Rocheleau.  See RSA 275:51, V.

The DOL awarded Greaney $8,390.  At the hearing, Greaney produced her 2010 W-2 form and her final paycheck from the restaurant.  Greaney testified that the amounts listed on her W-2 and her final paycheck were the amounts she "took home," and did not include "the amounts [she] [gave] away." Greaney produced evidence that she took home $4,869.50 in tips in 2010 and $3,663 in tips in 2011, which means that the total of her tips in 2010 was $12,173.75, and in 2011 was $9,157.50.  As $8,390 is less than 60% of the total tips Greaney earned, we conclude that the employer has failed to demonstrate that the DOL erred, as a matter of law, when it awarded $8,390 in lost wages to Greaney.  See RSA 275:51, V.

The employer next argues that the trial court erred when it awarded the employees their attorney's fees pursuant to RSA 275:53, III (2010).  The employer contends that because the employees' wage claims were brought under RSA 275:51, V, they are not entitled to recover attorney's fees.  The employer asserts that attorney's fees may be awarded only in a direct superior court action brought under RSA 275:53 (2010).  In Galloway v. Chicago-Soft, 142 N.H. 752, 759-60 (1998), we expressly rejected identical arguments.  See Demers Agency v. Widney, 155 N.H. 658, 664 (2007) (relying upon Galloway to conclude that "attorney's fees and interest are available in superior court appeals under RSA 275:51").  The employer invites us to overrule Galloway, arguing that it is "inherently unworkable" because it conflicts with Ives v. Manchester Subaru, Inc., 126 N.H. 796, 803-04 (1985).  We decline the employer's invitation.

"The doctrine of stare decisis demands respect in a society governed by the rule of law, for when governing legal standards are open to revision in every case, deciding cases becomes a mere exercise of judicial will with arbitrary and unpredictable results."  Appeal of Phillips, 165 N.H. 226, 231 (2013) (quotation omitted).  "When asked to reconsider a holding, the question is not whether we would decide the issue differently de novo, but whether the ruling has come to be seen so clearly as error that its enforcement was for that very reason doomed."  Id. (quotation omitted).  Generally, we will overrule a prior decision only after considering:

(1) whether the rule has proven to be intolerable simply by defying practical workability; (2) whether the rule is subject to a kind of reliance that would lend a special hardship to the consequence of overruling; (3) whether related principles of law have so far developed as to have left the old rule no more than a remnant of abandoned doctrine; and (4) whether facts have so changed, or come to be seen so differently, as to have robbed the old rule of significant application or justification.

4

Id. at 231-32 (quotation omitted).  The employer has not briefed any of these factors.

Its sole argument in its brief as to why we should overrule Galloway is that, in the employer's view, it conflicts with Ives.  The employer is mistaken.  In Ives, we did not address whether attorney's fees could be awarded in an action brought under RSA 275:51, V.  Ives, 126 N.H. at 803-04.  We addressed only whether such fees could be awarded in a case brought under RSA 275:53 and noted that they could.  Id. at 803.  Until Galloway, we were not presented with the question of whether fees could be awarded in a case brought under RSA 275:51, V.  In that case, we concluded that attorney's fees could be awarded, even though a "strict construction" of the language of RSA 275:53, III might lead to a different result.  Galloway, 142 N.H. at 759.  We reasoned that because RSA chapter 275 is protective legislation, see Ives, 126 N.H. at 804, we construe it in general, and RSA 275:53, III in particular, "to effectuate the broad purpose of protecting employees."  Id.  Accordingly, we held that when a wage claim has been found to be meritorious, whether brought directly to the court pursuant to RSA 275:53, or on appeal from a DOL decision pursuant to RSA 275:51, V, the court "should exercise its statutory discretion by awarding reasonable counsel fees, unless the court . . . finds particular facts that would render such an award inequitable."  Id. (quotation omitted).

Significantly, it has been sixteen years since we decided Galloway, and, in that time, the legislature has not amended RSA 275:53, III.  Thus, we assume that our holding conforms to legislative intent.  See Appeal of Phillips, 165 N.H. at 232.  We, therefore, affirm our decision in Galloway that attorney's fees are available in a claim brought pursuant to RSA 275:51, V.  Should the legislature disagree with our statutory interpretation, it is free to amend the applicable statutes as it sees fit.

Affirmed.

HICKS, LYNN, CONBOY, and BASSETT, JJ., concurred.

5