# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2020-0449, <u>ClearChoiceMD, PLLC v. Horace Henriques, MD</u>, the court on September 14, 2021, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The plaintiff, ClearChoiceMD, PLLC (employer), appeals, and the defendant, Horace Henriques, MD (employee), cross-appeals, a ruling of the Superior Court (<u>McNamara</u>, J.) upholding a wage claim decision issued by the New Hampshire Department of Labor (DOL) in favor of the employee. The employer asserts that the superior court erred in affirming the DOL's wage claim decision and in calculating the attorney's fee award. The employee asserts that the superior court erred in reversing the DOL's award of liquidated damages. We affirm the superior court's rulings.

The following facts are supported by the record. In August 2016, the employee accepted an offer from the employer to work as a physician at its Lebanon Clinic. The employment agreement set out his compensation as "a salary of $100 hourly" and also provided: "Physicians who average one shift per week are eligible to participate in [ClearChoiceMD's] RVU productivity based bonus pay program. You will have access to your relevant data to insure financial transparency and accountability." RVU stands for "relative value units" under which productivity is measured.

The employee began working in September 2016 and, in December 2016, he received his first bonus, accompanied by a document that contained the bonus calculations for the prior quarter. The document listed the base RVU as 3.2. Through February 2017, the employee was paid his quarterly bonus at a rate of 3.2 RVUs. However, in March 2017, without prior notice and unbeknownst to him, the employer began to gradually increase the bonus rate from 3.2 to 4.5, to the employee's detriment. In April 2018, the employee inquired about his reduced bonus payout and was told by the employer that the decline in the RVUs stemmed from a companywide compliance issue having to do with the proper coding of medical procedures. In January 2019, the employee discovered that changes had been made to the RVU base rate. In response to his inquiry seeking clarification regarding how the bonus was calculated, the employer acknowledged that the base rate had changed, explaining that the original rate did not take into account costs pertaining to

corporate management services and "[i]nstead of making the fix all at once, [it] gradually increased the rate to the correct amount."

In August 2019, the employee filed a wage claim with the DOL, asserting that he was owed unpaid bonus pay and requesting liquidated damages, plus interest and attorney's fees. Following a hearing, the hearing officer found that "the employer's conduct established a contract under which [the employee] would bonus off the 3.2 rate." Given that it was "uncontested that [the employee's] quarterly bonus payments, after the commencement of his employment, were based on a bonus rate of 3.2," the officer found that "[w]ithout receipt of written notification of a change to the bonus rate, it [was] reasonable for [the employee] to assume that his future bonuses would also be based on a bonus rate of 3.2."

Determining that the bonus qualified as a wage, the hearing officer concluded that there was "no reasonable argument to exclude the bonus payments from wages in this matter" and, thus, the employee was "owed $41,284.62 in unpaid wages in the form of unpaid bonus pay." The hearing officer also found that the employee notified the employer "of his concerns regarding bonus pay and provided an opportunity for [the employer] to resolve the problem before filing a Wage Claim," but the employer "chose not to take corrective action." Thus, the officer concluded, the employer "knowingly withheld pay, which [the employee] was owed, willfully and without good cause," and awarded the employee liquidated damages. However, because "no evidence was provided with respect to the amount" of attorney's fees owed, the officer denied his request for attorney's fees.

The parties appealed to the superior court. The superior court upheld the DOL's wage claim determination, but reversed the DOL's award of liquidated damages and its denial of attorney's fees. The court also awarded the employee attorney's fees for the proceedings in superior court. This appeal and cross-appeal followed.

Any party aggrieved by a DOL wage claim decision may appeal to the superior court by petition specifying the grounds upon which the decision is claimed to be in error. Ichiban Japanese Steakhouse v. Rocheleau, 167 N.H. 138, 140 (2014); see RSA 275:51, V (2010). The scope of review by the superior court shall be limited to questions of law. Ichiban, 167 N.H. at 140. After hearing and upon consideration of the record, the superior court may affirm, vacate or modify, in whole or in part, the decision of the commissioner, or may remand the matter to the commissioner for further findings. Id. We, in turn, review the superior court's decisions on questions of law de novo. Id.

In its appeal, the employer argues that the superior court erred in affirming the DOL's finding that the "additional bonus amounts" claimed by the

employee constituted "wages due," because the employer "was not obligated to pay [the employee] any bonus at all." (Bolding omitted.) The employer asserts that, in so finding, it was error for the court to consider extrinsic evidence to "correct so-called 'ambiguities' that did not actually exist" because, under the plain language of the contract, the employee was "simply eligible to participate in the RVU bonus program" but was not entitled to do so.

The interpretation of a written contract is a question of law for this court, which we review de novo. See Behrens v. S.P. Constr. Co., 153 N.H. 498, 500 (2006). When interpreting a written agreement, we give the language used by the parties its reasonable meaning, considering the circumstances, and the context in which the agreement was negotiated, and reading the document as a whole. In the Matter of Taber-McCarthy & McCarthy, 160 N.H. 112, 115 (2010). The language of a contract is ambiguous if the parties could reasonably disagree as to the meaning of that language. Birch Broad. v. Capitol Broad. Corp., 161 N.H. 192, 196 (2010).

The employment agreement between the parties provided that "Physicians who average one shift per week are eligible to participate in [ClearChoiceMD's] RVU productivity based bonus pay program. You will have access to your relevant data to insure financial transparency and accountability." The ordinary meaning of "eligible" is "qualified to be chosen . . .: entitled to something." Webster's Third New International Dictionary 736 (unabridged ed. 2002). As the superior court explained, because the bonus program was discussed in the "Compensation" addendum to the employment agreement, "it was reasonable for [the employee] to interpret the bonus as compensation for his services as a physician." On the other hand, the court reasoned, "it was also objectively reasonable for [the employer] to interpret 'eligible' to mean that it retained the discretion not to award a bonus." Thus, the court determined, the hearing officer did not err "by considering the course of performance as extrinsic evidence of the parties' intent." Given that both interpretations were objectively reasonable, we agree with the superior court that "the incentive plan provision [was] ambiguous" as to whether the parties intended that the employee was simply "qualified to be chosen" to participate in the bonus plan at the employer's discretion or was "entitled" to participate in the bonus plan as part of his compensation.

The employer testified that its offer to the employee was that he would be paid "a base hourly rate of 100 dollars" and was "entitled to participate in the incentive pay" to increase his total hourly rate. The employee testified that he accepted the employer's offer that he would be "compensated at an hourly wage and with the RVU system." The record shows that throughout his employment, the employee was paid an hourly rate and received quarterly bonuses under the incentive plan accompanied by written statements containing financial

3

data. Furthermore, as the superior court noted, had the employer interpreted the bonus to be a discretionary benefit, "it was required to provide written notice to [the employee] of all practices and policies with regard to the program." (Quotation omitted.) See RSA 275:49, III (2010); N.H. Admin. R., Lab 803.03(b). Accordingly, considering the circumstances, and the context in which the agreement was negotiated, and reading the document as a whole, we conclude that the parties intended that the employee was entitled to participate in the bonus program.

The employer argues that the hearing officer and the superior court erred in considering extrinsic evidence to determine what base RVU rate applied in calculating the employee's quarterly bonuses. As the employer recognizes, however, "[e]ven absent an ambiguity, parol evidence can be admitted in certain instances to prove the existence of terms or conditions not expressed in the writing." Lapierre v. Cabral, 122 N.H. 301, 306 (1982). The hearing officer found that the contract was "unclear what the bonus rate for [the employee] was," and, thus, he construed the agreement through the parties' course of conduct. From the employer's conduct, the hearing officer found that it was "uncontested that [the employee's] quarterly bonus payments . . . were based on a bonus rate of 3.2." Thus, the officer found, "[w]ithout receipt of written notification of a change to the bonus rate, it [was] reasonable for [the employee] to assume that his future bonuses would also be based on a bonus rate of 3.2." We find no error.

Contrary to the employer's assertion, the record does not support that the DOL and the superior court "reli[ed] on the notice requirements of RSA 275:49 and [New Hampshire Administrative Rule] Lab 803.03" to "punish [it] for an alleged notice violation irrespective of the existence of any obligation to pay a particular bonus in the first place." (Bolding omitted.) Rather, as a threshold matter, the hearing officer found, and the superior court affirmed, that the bonus constituted a wage. See RSA 275:42, III (2010) (defining wages as "compensation . . . for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission, or other basis of calculation"); see Demers Agency v. Widney, 155 N.H. 658, 662 (2007) (concluding that the bonus at issue was compensation for the employee's services to the employer determined on a basis of calculation other than time, task, piece, or commission). Because the bonus paid to the employee constituted a wage, the law required advance written notice of any change to the employee's bonus prior to the effective date of the change. See RSA 275:49 (Supp. 2020); N.H. Admin. R., Lab 803.03(c).

The employer also argues that the superior court erred in calculating the award of attorney's fees. According to the employer, because it prevailed in the superior court on the liquidated damages claim, an award of all of the employee's fees is not reasonable. However, we agree with the employee that

4

this issue was not raised before the superior court and, therefore, is waived. See Ross, Tr. v. Ross, 170 N.H. 331, 336 (2017) ("It is a long-standing rule that parties may not have judicial review of matters not raised in the forum of trial.").

We have reviewed the employer's remaining appellate arguments and conclude that they do not warrant further discussion. See Vogel v. Vogel, 137 N.H. 321, 322 (1993).

The employee contends in his cross-appeal that the superior court erred when it reversed the hearing officer's finding that the employer's failure to pay wages due was "willful and without good cause." The employee asserts that the hearing officer's finding of willfulness was "a quintessential fact issue" supported by competent evidence and, thus, the court's reversal violates RSA 275:51, V. See RSA 275:51, V (providing that the scope of the superior court's review is limited to questions of law). The superior court, however, determined that the hearing officer misconstrued the applicable standard as a matter of law. As the court explained, the officer "came to the erroneous conclusion that because the employee advised the employer of a dispute involving a claim, and the employer did not pay it, failure to pay the claim [was] 'willful and without good cause.'"

The liquidated damages statute, RSA 275:44, IV (2010), "was not intended to impose liability where the employer's refusal to pay wages is based upon bona fide belief that he is not obligated to pay them." Ives v. Manchester Subaru, Inc., 126 N.H. 796, 801 (1985). Thus, as the superior court reasoned, "where 'there was a legitimate dispute as to whether the [employer] owed wages to the employee[],' the trier of fact cannot find the employer lacked a 'bona fide belief for withholding wages' absent evidence sufficient to support such a finding." (Quoting Chisholm v. Ultima Nashua Indus. Corp., 150 N.H. 141, 146 (2003)). The court correctly determined that, in this case, "in light of the ambiguity of the contract" and the fact that "[l]egitimate questions were raised about the validity of [the employee's] claim," the employer's failure to pay the alleged wages upon demand of the employee was "consistent with a bona fide belief that no wages were owed." Accordingly, we uphold the superior court's reversal of the award of liquidated damages as a matter of law.

Finally, the employee contends that the award of attorney's fees should also include reasonable fees incurred on appeal. See Galloway v. Chicago-Soft, 142 N.H. 752, 759 (1998) (explaining that "when the court has found a wage claim meritorious, it should exercise its statutory discretion by awarding reasonable counsel fees" in order to "effectuate the broad purpose [of the legislation] of protecting employees" (quotation omitted)). The employee may

file a properly-supported motion for reasonable fees incurred on appeal within 30 days of the date of this order. Thereafter, the employer may file a response within 10 days.

Affirmed.

MACDONALD, C.J., and HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.

**Timothy A. Gudas,
Clerk**
