Cheshire
No. 2004-867

CAMBRIDGE MUTUAL FIRE INSURANCE COMPANY

v.

PEERLESS INSURANCE COMPANY

Argued: May 18, 2005
Opinion Issued: July 29, 2005

*Bouchard, Kleinman & Wright, P.A.*, of Hampton (*Kenneth G. Bouchard* on the brief and orally), for the plaintiff.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Andrew D. Dunn* and *Donald L. Smith* on the brief, and *Mr. Dunn* orally), for the defendant.

NADEAU, J. The plaintiff, Cambridge Mutual Fire Insurance Company (Cambridge), appeals an order of the Superior Court (*Sullivan*, J.) granting the defendant's, Peerless Insurance Company (Peerless), motion for summary judgment and denying Cambridge's motion to reconsider. We affirm and remand.

The following facts are not in dispute. In September 1999, Peter Bennett and Lynne Bridgewood (the insureds) began constructing a home in Bartlett. On December 15, 2000, they applied to Peerless for a homeowner's insurance policy. Their application stated that the "[h]ome w[ould] be done within the next three months." The homeowner's policy was purchased through Peter Hall of Saco Valley Insurance Company. Peerless issued the homeowner's policy for the period of December 22, 2000, to December 22, 2001.

In March and June of 2001, Peerless contacted Hall regarding the status of the construction of the insureds' home. By August 2001, the home was still not completed and Peerless ordered an inspection of the insureds' property. That inspection was delayed and Peerless ultimately received the inspection report on December 26, 2001. During the delay, however, Peerless automatically renewed the homeowner's policy for the period of December 22, 2001, to December 22, 2002.

After receiving the inspection report, Peerless wrote to Hall on January 10, 2002, requesting that he cancel the insureds' homeowner's policy and

move the account to a builder's risk policy because construction on the home was not yet complete. Receiving no response, Peerless sent a second request to Hall on February 10, 2002. In early March 2002, Hall contacted Cambridge regarding the issuance of a homeowner's policy for the insureds' property. After Cambridge agreed to underwrite a homeowner's policy, Hall contacted the insureds and advised them of Peerless' request and that they could replace the Peerless policy with a policy from Cambridge.

The insureds applied for the Cambridge homeowner's policy on March 15, 2002. Cambridge subsequently issued a policy with an effective date of March 15, 2002. It was the insureds' understanding that Hall would cancel the Peerless policy so as to avoid dual coverage, though they were unaware of the mechanics for effecting a cancellation.

It was the policy of Saco Valley Insurance Company not to cancel existing policies before a replacement policy has been received. Using the same notice form that Peerless had used to request that the insureds' homeowner's policy be replaced with a builder's risk policy, Hall notified Peerless that, "[a]s of 3-15-02 [the insureds'] homeowners insurance was placed with Cambridge Mutual." Hall's response was received by Peerless on March 19, 2002.

On April 4, 2002, the insureds' property was destroyed by fire. The next day, Hall met with the insureds and advised them that the Cambridge policy covered their loss. Hall subsequently provided the insureds with a Cancellation Request/Policy Release for the Peerless homeowner's policy. The form expressly cancelled the Peerless homeowner's policy with an effective date and hour of cancellation of March 15, 2002, at 12:01 AM. The form also identified the new Cambridge policy as becoming effective March 15, 2002. Both insureds signed the form on April 5, 2002, and Peerless refunded to the insureds the unused portion of their premiums paid on the cancelled Peerless homeowner's policy on April 14, 2002.

Cambridge paid the insureds $667,000 for losses sustained as a result of the fire and brought a declaratory judgment action against Peerless for reimbursement from its proportional share of coverage under the terms of the Peerless homeowner's policy. Cambridge asserted claims for contribution and subrogation, arguing that at the time of the fire, the insureds' property was covered by both a Cambridge and a Peerless homeowner's policy. After discovery, Cambridge sought to amend its petition to add claims for indemnity, fraud, negligent misrepresentation, intentional misrepresentation and bad faith. The court granted summary judgment to Peerless without addressing the pending motion to amend. The court subsequently denied Cambridge's motion to reconsider. This appeal followed.

On appeal, Cambridge argues that the trial court erred by: (1) granting Peerless' motion for summary judgment despite the existence of disputes regarding material facts; (2) relying on the doctrine of mutual cancellation; (3) failing to apply RSA chapter 417-B (1998 & Supp. 2004) (amended 2003); and (4) failing to grant Cambridge's motion to amend.

We will address Cambridge's first two arguments together. Cambridge argues that there were disputes of material fact as to whether the cancellation of the Peerless homeowner's policy was mutually agreed upon, and that the court erred by relying upon the doctrine of mutual cancellation.

> We will affirm a trial court's grant of summary judgment if, considering the evidence and all inferences properly drawn therefrom in the light most favorable to the non-movant, our review of that evidence discloses no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. We review the trial court's application of the law to the facts *de novo*.

*Coyle v. Battles*, 147 N.H. 98, 100 (2001) (quotation, citation and ellipsis omitted).

■ The right to cancel an insurance policy arises "[e]ither by virtue of statute, from the terms of the contract itself, by express stipulation or mutual consent of the parties, or by reason of some breach thereof which justifies cancellation under the ordinary rules of contract law." L. R. RUSS & T. F. SEGALLA, COUCH ON INSURANCE 3D § 30:1 (1997). Moreover, we have recognized that "a policy may be canceled by mutual consent without a formal surrender of the policy by the insured or a tender of the unearned premium by the insurer." *McCabe v. Company*, 90 N.H. 80, 86 (1939).

An agreement to rescind an insurance contract is itself a contract. *Storms v. U.S. Fidelity & Guar. Co.*, 118 N.H. 427, 431 (1978). In order for a contract to be formed there must be a meeting of the minds. *Fleet Bank-NH v. Christy's Table*, 141 N.H. 285, 287 (1996). Mere mental assent is not sufficient; a meeting of the minds requires that the agreement be manifest. *Id.* at 288.

Cambridge argues that the homeowner's policy was not mutually cancelled because it was the policy of Saco Valley not formally to cancel an existing insurance policy until its replacement had arrived and that Peter Hall was not acting as a dual agent. We disagree.

■ The trial court properly ruled that the undisputed facts established that the Peerless policy was cancelled by the mutual agreement of the parties prior to the April 4, 2002 fire. It is undisputed that Peerless wished

to move the insureds to a builder's policy and cancel the existing homeowner's insurance policy. In addition, the deposition testimony of the insured, Peter Bennett, confirms that he "assumed when [he] signed up with the other one [the Cambridge policy] that the previous one would be canceled" and that when the insureds handed a check for the Cambridge policy premium to their agent, Peter Hall, "[t]hat he would cancel [his] previous policy." The intent to cancel was communicated to Peerless in a letter written by Hall. Though the insureds may not have known the formal procedures required for cancellation, the evidence, viewed in the light most favorable to Cambridge, clearly establishes the manifest mutual agreement to cancel the Peerless policy.

In the alternative, Cambridge argues that the policy could not have been mutually cancelled because Hall was not acting as dual agent. We note first that in New Hampshire, the same person may represent both the insurer and the insured, thereby creating a dual agency, so long as the agent is not required to assume incompatible duties as part of the dual agency relationship. *Federal Insurance Co. v. Sydeman*, 82 N.H. 482, 484 (1927). Accordingly, "an insurance agent who represents several companies may also represent a property owner for the purpose of selecting companies and keeping the property insured, and ... he may therefore cancel a subsisting policy and substitute another in its place." *Id.* It is clear from the record that Hall was acting as a dual agent. He communicated Peerless' desire to change policies to the insureds. They, in turn, authorized him to procure the new Cambridge policy and cancel the Peerless policy. Hall subsequently notified Peerless of the cancellation. Viewing the evidence in the light most favorable to Cambridge, the trial court was not mistaken in finding that Hall was acting in a dual agency capacity.

Next, Cambridge contends that the trial court erred in failing to apply RSA chapter 417-B. However, we need not address this argument because the policy was cancelled by the mutual consent of the parties and RSA chapter 417-B applies only to insurance policies that are cancelled by the insurer.

Finally, we address Cambridge's argument that the trial court erred in failing to grant its motion to amend. The motion to amend at issue sought to assert several new substantive claims against Peerless for (1) indemnity, (2) fraud, (3) negligent misrepresentation, (4) intentional misrepresentation, and (5) bad faith. However, the record before us does not indicate that the trial court has ever ruled on the motion to amend. We decline the parties' invitation to address the issue before the trial court has made a ruling.

Accordingly, we affirm the trial court's grant of summary judgment and remand to the trial court for consideration of the motion to amend.

*Affirmed and remanded.*

BRODERICK, C.J., and DALIANIS and DUGGAN, JJ., concurred.