# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2016-0589, <u>Christopher Ouellette v. Chuck Smith's Auto, LLC</u>, the court on September 29, 2017, issued the following order:**

Having considered the briefs, the memorandum of law, and the record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm in part, reverse in part, and remand.

The plaintiff, Christopher Ouellette (buyer), appeals, and the defendant, Chuck Smith's Auto, LLC (seller), cross-appeals, an order of the Circuit Court (<u>Crocker</u>, J.) following a trial on the merits. The buyer contends that the trial court erred by: (1) finding the evidence insufficient to show that the vehicle he purchased from the seller should not have passed the New Hampshire motor vehicle inspection on the date of sale, <u>see</u> RSA 266:1 (Supp. 2016); (2) ruling that the seller did not violate RSA 358-A:2, V or VII (2009), which are part of the Consumer Protection Act, or RSA chapter 358-F (2009), governing the sale of unsafe used vehicles; (3) finding that a written agreement executed by the buyer and the seller's employee did not cancel the sale; and (4) awarding the seller both the vehicle and the full purchase price as damages. The seller contends that the trial court erred by not awarding it: (1) storage costs; and (2) attorney's fees.

We first address whether the evidence compelled a finding that the vehicle should not have passed inspection. We will affirm the trial court's factual findings unless they are unsupported by the evidence or legally erroneous. <u>Behrens v. S.P. Constr. Co.</u>, 153 N.H. 498, 500-01 (2006). Conflicts in testimony, questions about the credibility of witnesses, and the weight to be given to testimony are matters for the trial court to resolve. <u>In the Matter of Aube & Aube</u>, 158 N.H. 459, 465 (2009). If the findings could reasonably have been made on all the evidence, they will stand. <u>Blagbrough Family Realty Trust v. A & T Forest Prods.</u>, 155 N.H. 29, 38 (2007).

In this case, the evidence establishes that on March 3, 2015, the buyer purchased a 12-year-old vehicle from the seller with an odometer reading of 110,902 miles. On the day of sale, a licensed inspector employed by the seller inspected the vehicle, passed it, and affixed an inspection sticker to it. Five days later, the buyer's neighbor, also a licensed inspector, examined the vehicle informally and opined that he would not have passed it due to rust holes in the frame and floor pan. The following day, the buyer had another licensed inspector examine the vehicle, but not formally inspect it, and that inspector also opined that it should not have passed inspection. Nine days after the sale, and after

driving the vehicle approximately 650 miles, the buyer returned the vehicle to the seller, who repaired several rust holes.

Approximately three months after the sale, a licensed inspector unassociated with either party inspected the vehicle and passed it. Approximately seven months after the sale, the buyer's expert, who was not a licensed inspector, examined the vehicle and opined that the rust holes he saw compromised the integrity of the frame and that the vehicle should have failed inspection at the time of the sale.

Following a three-day evidentiary hearing, the trial court found that the buyer had not met his burden to show "how much rust, in combination with the holes/cracks complained of, in their size and locations, tip the scales from a twelve year old car having been driven on the salt laden roads of NH with inevitable undercarriage rust that passes inspection, from one that does not." It noted that it based its findings, in part, upon the credibility and demeanor of the witnesses.

The trial court could have reasonably inferred from the evidence that the rust holes that the buyer complained about appeared after he purchased the vehicle. The buyer's neighbor testified that when he examined the undercarriage, he "was in there with [his] hands and grouting [sic] the frame and checking to see how thick it was and seeing if anything fell off, and pieces did fall apart while [he] was doing [his] inspection." Furthermore, the seller's independent inspector testified that rust holes can appear when a vehicle passes over bumps while "driving over aggressive roads" causing existing rust to fall off the vehicle. Although the buyer's expert opined that the holes did not appear to be caused by contact or vibration and that they appeared to have been in the frame for at least a year, he did not view the vehicle until approximately seven months after the sale. See Cook v. Sullivan, 149 N.H. 774, 780 (2003) (stating trial court free to accept or reject, in whole or in part, whatever evidence was submitted, including testimony of expert witnesses).

Moreover, the trial court could have reasonably inferred that, assuming that the rust holes were present when the buyer purchased the vehicle, they were not significant enough to render the vehicle unable to pass inspection. The buyer emphasizes that the Department of Safety regulations require that a vehicle fail inspection "if the frame or other structural components are broken, cracked or rusted to a degree that affects the safety of the vehicle." N.H. Admin. Rules, Saf-C 3221.06(a). He argues that the regulation requiring that "[a]ny portion of the body or chassis of a vehicle which is missing or damaged shall be replaced with material(s) that meet the manufacturer's specifications," N.H. Admin. Rules, Saf-C 3221.02, means that he "need not show anything more to prove a safety violation than that there are rust holes in the frame which are not repaired." He contends, without citation, that "[i]f there were rust holes in the frame, then the frame does not meet the original design of the manufacturer, and therefore the frame is rusted to a degree that affects the safety of the vehicle."

However, the independent inspector and the buyer's expert both testified that whether a rust hole constitutes a structural issue affecting safety depends upon its exact location. The buyer's expert testified that the vehicle had a heavy duty frame, that it was manufactured with four-inch holes in the frame, and that the rust holes at issue were smaller. Furthermore, the buyer's neighbor and the independent inspector both testified that, when a vehicle's frame has rust holes, whether it passes inspection is a matter of judgment.

The buyer argues that the seller's repairs after the buyer returned the vehicle are "an admission that the vehicle did not meet inspection requirements" when the buyer bought the vehicle. However, the trial court could have reasonably inferred that the seller had other reasons for making the repairs, such as making the vehicle more appealing to a future buyer, preventing the rust holes from enlarging, or simply avoiding future dispute over the holes.

The buyer argues that the independent inspector passed the vehicle after the buyer returned it because the seller repaired some holes and improperly filled others with "some type of rubberized compound," thereby obscuring them. However, the seller's mechanic testified that he did not fill holes with such a compound, and the independent inspector testified that he did not see holes filled with compound.

We conclude that the trial court's decision not to "find that the vehicle should not have passed inspection on the day it was sold" was supported by the evidence and not legally erroneous. See Behrens, 153 N.H. at 500-01. In light of this conclusion, we need not address the buyer's claims under RSA 358-A:2, V, RSA 358-A:2, VII, or RSA chapter 358-F because they rest upon the assertion that the vehicle should not have passed inspection on the day it was sold.

We next address whether the written agreement executed by the buyer and the seller's employee on March 12, 2015, when the buyer returned the vehicle, cancelled the contract. That agreement expressly "acknowledge[d] that the deal between [the seller] and [the buyer] regarding [the vehicle] has been cancelled and the truck has been returned to [the seller]." The buyer testified that he understood, after signing this agreement, that the purchase and sale contract was cancelled.

To the extent that the seller argues that the buyer did not plead breach of contract in his complaint, and assuming, without deciding, that the buyer was required to plead breach of contract in order to rely upon the agreement in defending against the dealer's breach of contract counterclaim, the seller did not object to the admission of the agreement at trial. The trial court considered the agreement and ruled upon it. Accordingly, we are not willing to elevate form over substance and reject the buyer's appeal of this issue. See N.H. Boring v. Adirondack Envtl. Assocs., 145 N.H. 397, 399 (2000) (argument that defendant failed to plead accord and satisfaction defense was waived when plaintiff failed to contest defendant's motion for directed verdict on that basis).

The trial court found that the buyer "had no grounds to revoke acceptance of the vehicle nor did he have grounds under the contract to cancel the contract pursuant to the terms of the contract." However, regardless of whether the buyer had grounds to cancel the original contract, the parties remained free to make a new contract superseding the prior contract. See Barnes v. N.H. Karting Assoc., 128 N.H. 102, 106 (1986) (stating that, as a matter of efficiency and freedom of choice, parties may contract freely about their affairs). The trial court further found that it lacked jurisdiction to address the equitable remedies of revocation of acceptance or rescission. However, an agreement to cancel a contract is itself a contract. Cambridge Mut. Fire Ins. Co. v. Peerless Ins. Co., 152 N.H. 498, 501 (2005); see RSA 502-A:14 (2007) (conferring jurisdiction upon district court over civil cases not involving title to real estate up to jurisdictional amount); RSA 490-F:3 (Supp. 2016) (conferring district court jurisdiction upon circuit court).

Moreover, the seller bore the burden to prove the existence of an enforceable contract between the parties in order to prevail upon its counterclaim. See Scott v. Grinnell, 102 N.H. 490, 493 (1960) (stating proponent of contract has burden of proving existence of contract). The buyer's challenge to the seller's proof by relying upon the subsequent agreement did not obligate the trial court to award equitable relief. Cf. N.H. Boring, 145 N.H. at 400-01 (upholding district court's granting of directed verdict to defendant in breach of contract claim on basis of accord and satisfaction).

The seller argues that the parties had agreed that the seller would repair or replace the vehicle. However, the parties remained free to alter that agreement. See Barnes, 128 N.H. at 106. The seller further argues that, because the buyer had already breached the contract by telling the financing company that he would not pay for the vehicle, there was no consideration for this contract. However, the buyer returned the vehicle.

The seller argues that its employee "had no authority to sign any such agreement." However, the employee who signed the agreement on behalf of the seller also executed the purchase documents — the purchase agreement/bill of sale, the buyer's order, and the retail installment contract and security agreement — on behalf of the seller. The granting of actual authority and consent to act with such authority may be either express or implied from the parties' conduct or other evidence of intent, or it may be apparent when the principal so conducts itself as to cause a third party to reasonably believe that the agent is authorized to act. Dent v. Exeter Hosp., Inc., 155 N.H. 787, 792 (2007).

The existence of a contract is a factual question to be determined by the trier of fact, Durgin v. Pillsbury Lake Water Dist., 153 N.H. 818, 821 (2006), as is whether an agent acted within her actual or apparent authority, State v. Zeta Chi Fraternity, 142 N.H. 16, 24 (1997). Accordingly, we reverse the trial court's judgment in favor of the seller on its counterclaim and remand for the trial court

4

to determine whether the March 12 agreement effectively cancelled the earlier purchase and sale agreement.

In light of this order, we need not address the parties' arguments regarding damages. In the interest of judicial economy, however, we briefly address the buyer's argument that the trial court erred by awarding the seller the full contract price. The trial court found that the buyer did not give the seller "clean title" to the vehicle when he returned it, and, therefore, the seller was "unable to resell the vehicle to mitigate [its] damages." However, the basis for this finding is not apparent to us.

RSA 261:14, III (2014) provides that, when a security interest is created at the time title to a vehicle is transferred, the certificate of title shall be delivered to the lienholder. RSA 261:25, II (2014) requires the lienholder to deliver to the Department of Motor Vehicles the application for a title showing the lien.

Here, the record does not reflect that the lienholder did so. On the contrary, the seller's employee testified that, after the buyer informed the financing company that he would not pay for the vehicle, the financing company "sen[t] everything just back" to the seller. Having returned the vehicle to the seller, the buyer did not assert ownership of it. Thus, it is unclear why the seller did not have "clean title" to the vehicle or could not obtain a new certificate of title absent the buyer's cooperation. Cf. RSA 261:12 (2014) (allowing owner to request duplicate title under certain circumstances).

Affirmed in part, reversed in part, and remanded.

Dalianis, C.J., and Hicks, Lynn, Bassett, and Hantz Marconi, JJ., concurred.

**Eileen Fox,
Clerk**
